JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

15-CV-730

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Jennifer Gordon, Valerie Tantlinger, and Jennifer Underwood, on behalf of themselves and all others similarly situated

**DEFENDANTS**
Kohl's Corporation and Capital One Financial Corporation

**(b)** County of Residence of First Listed Plaintiff   Montgomery Co., PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Waukesha Co., WI
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Saltz Mongeluzzi Barrett & Bendesky, P.C., 1650 Market St., 52nd Fl., Philadelphia, PA 19103.   (215) 496-8282

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Deceptive and unlawful conduct involving fee-based add-on or ancillary products with credit cards

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
5,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE 2/13/2015
SIGNATURE OF ATTORNEY OF RECORD   Charles J. Kocher

FEB 13 2015

**FOR OFFICE USE ONLY**
RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.



## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Jennifer Gordon, Valerie Tantlinger, and
Jennifer Underwood, on behalf of
themselves and all others similarly situated,

CIVIL ACTION
NO.

v.

Kohl's Corporation and Capital One Financial Corporation

15      730

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus - Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security - Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration - Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos - Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management - Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) (X)

(f) Standard Management-Cases that do not fall into any one of the other tracks. ( )

| 2/13/2015 | Charles J. Kocher | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 496-8282 | (215) 496-0999 | ckocher@smbb.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

FEB 13 2015

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _See Attached_

Address of Defendant: _See Attached_

Place of Accident, Incident or Transaction: _Defendants' Places of Business_
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))        Yes☐  No☑

Does this case involve multidistrict litigation possibilities?        Yes☐  No☑

RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. Diversity Jurisdiction Cases:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☑ All other Diversity Cases
   (Please specify) _CAFA_

### ARBITRATION CERTIFICATION
(Check Appropriate Category)

I, _Charles J. Kocher_, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _2/13/2015_        _[signature]_ Attorney-at-Law        PA I.D. 93141
Attorney I.D.#        FEB 13 2015

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _2/13/2015_        _[signature]_ Attorney-at-Law        PA I.D. 93141
Attorney I.D.#

CIV. 609 (5/2012)



**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

FILED

FEB 1 3 2015

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

| | |
|---|---|
| JENNIFER GORDON, VALERIE TANTLINGER and JENNIFER UNDERWOOD, on Behalf of Themselves and All Others Similarly Situated, | No.: |
| | 15 730 |
| Plaintifs, | |
| | COMPLAINT – CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| KOHL'S CORPORATION and CAPITAL ONE FINANCIAL CORPORATION, | |
| Defendants. | |

### CLASS ACTION COMPLAINT

Plaintiffs, Jennifer Gordon ("Gordon"), Valerie Tantlinger ("Tantlinger") and Jennifer Underwood ("Underwood," collectively "Plaintiffs"), by their attorneys, allege the following against Defendants Kohl's Corporation and Capital One Financial Corporation on behalf of themselves and all others similarly situated on information and belief based on the investigation of their counsel, except as to the allegations that pertain to the named Plaintiffs and their attorneys, which are alleged on personal information and belief against Defendants Kohl's Corporation ("Kohl's"), and Capital One Financial Corporation ("Capital One," together "Defendants") as follows:

### NATURE OF ACTION

1.     This class action arises from Defendants' deceptive, oppressive and unlawful



course of conduct in marketing, advertising and/or imposing fee-based add-on or ancillary products with Kohl's credit cards, known as "Account Ease," "Account Protection," "Accountguard," "Debt Cancellation," "Credit Card Protection" or other similar monikers that offer similar coverage (collectively referred to as "Payment Protection") and Identity Protection Products (collectively referred to as "Privacyguard") ("Payment Protection" and "Privacyguard" products and services collectively referred to as "Ancillary Products").

Payment Protection

2.     Defendants marketed and/or imposed Payment Protection – for which customers make monthly payments – as a product akin to insurance that purports to cancel a consumer's Kohl's credit card balance in certain circumstances. As described below, however, Defendants engage in unfair and deceptive practices with regard to Payment Protection by, among other things: (i) enrolling and/or charging consumers without their express permission, express informed consent, or express agreement ("slamming"); (ii) enrolling consumers into and/or charging consumers for a product with little or no value; and/or (iii) overcharging consumers for Payment Protection. Specifically:

      a. **Slamming**: Defendants enroll and/or charge consumers for Payment Protection services absent the consumers' express affirmative request, express informed consent, and/or express agreement. Prior to enrolling and/or charging consumers, Defendants fail to disclose the material terms and conditions and cost of Payment Protection. Also, because consumers do not know this "coverage" has been imposed and/or charged, they cannot avail themselves of the benefits of Payment Protection.

      b. **Unfa ir Enrollment into and/or Charging for a Product of Little or No Value**: Defendants employ uniform, deceptive, and unlawful practices to enroll customers in and/or charge them for Payment Protection for whom the product has little or no benefit. Notably, Defendants conduct little or no inquiry to ensure consumers qualify when unilaterally enrolling them into and/or charging them fees for

2

Payment Protection resulting in ineligible consumers being enrolled and/or charged for the product.

c. **Overcharging for Payment Protection**: Defendants uniformly charge consumers a monthly fee for Payment Protection based upon their ending monthly credit card balance, irrespective of the date when customers made purchases to their account, resulting in consumers overpaying for coverage. This billing practice results in many consumers paying for a full month of coverage even though they receive less than a month – and sometimes only a few days – of coverage due to the date of their purchases that month or because there is a 90 day waiting period for employment and disability-based claims in which case the consumer is paying for non-existent coverage.

3. Defendants knew or should have known that Payment Protection provides little or no value because many consumers were: (i) "slammed" or unaware that they had been enrolled into and/or charged for Payment Protection, and, therefore, do not avail themselves of its purported benefits; (ii) ineligible for benefits at the time of enrollment and/or when charged; and/or (iii) overcharged for Payment Protection.

Privacyguard

4. Defendants marketed and/or imposed Privacyguard – for which customers make monthly payments – as a product that purports to "protect" consumers' identity, ostensibly, through credit monitoring and credit report retrieval services. As described below, however, Defendants engage in unfair and deceptive practices with regard to Privacyguard, among other things by: (i) enrolling and/or charging consumers without their express permission, express informed consent, or express agreement ("slamming"); and/or (ii) enrolling and/or charging consumers for a product with little or no value because they receive no benefit or only partial benefit.

a. **Slamming**: Defendants enroll and/or charge consumers for Privacyguard services absent the consumers' express affirmative request, express informed consent, and/or express agreement. Prior to enrolling and/or charging consumers, Defendants fail to disclose the

material terms and conditions and cost of Privacyguard. Because consumers do not know this "coverage" has been imposed, they end paying for a service they did not consent to or utilize.

b.**Unfa ir Enrollment into and/or Charging for a Product of Little or No Value**: Defendants employ uniform, deceptive, and unlawful practices to enroll customers in and/or charge them for Privacyguard for whom the product has little or no benefit. Consumers enrolled in and/or charged for Defendants' Privacyguard (i) did not receive full credit monitoring benefits; (ii) received only partial credit monitoring and/or credit report retrieval; and/or (iii) did not receive credit report retrieval benefits.

5.      Defendants knew or should have known that Privacyguard provided little or no value because many consumers (i) were "slammed" or unaware that they had been enrolled and/or charged and/or were consequently paying for a service they did not consent to enrollment into and/or to be charged for and/or (ii) were not receiving any or were only receiving partial credit monitoring and/or credit report retrieval benefits.

6.      Defendants' advertising, marketing, enrollment, billing, and collection practices in connection with their Ancillary Products are particularly egregious in that they fail to inform consumers that these products are optional, may be cancelled at any time, are not required for consumers to activate or use, or to continue to use their card, and further fail to adequately disclose the material terms and conditions and costs for the Ancillary Products. Even after consumers cancel their Kohl's credit card and/or the Ancillary Products, Defendants continue to bill Plaintiff (such as Plaintiff Underwood) and other consumers and/or file negative reports on their credit reports, lowering the consumers' credit scores.

7.      For the foregoing reasons, as particularized below, Defendants have violated federal and various states' statutory and common law through the deceptive manner in which they enroll in and charge consumers for Ancillary Products. As a result, Defendants have been unjustly enriched and received millions of dollars from consumers for largely valueless products

4

they did not consent to be charged for, and often did not know they are being charged for. These deceptive and unfair practices have significantly and substantially harmed Plaintiffs and putative Class Members.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), in that: (a) the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs; (b) this is a class action involving 100 or more class members; and (c) at least one member of the Plaintiff class is a citizen of a State different from at least one Defendant.

9.      Plaintiff Jennifer Gordon is a resident of this district and division.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a), (b) and/or (c); many of the acts and transactions giving rise to the violations of law complained of herein occurred in this district and Defendants conduct substantial business in this district.

## CHOICE OF LAW

11.     Defendants represent in their card member agreements that Federal Law and Virginia Law apply to the claims asserted in this action. Specifically:

> **GOVERNING LAW: THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOUR ACCOUNT SHALL BE GOVERNED AND INTERPRETED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF VIRGINIA, WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES. THE LAW OF VIRGINIA, WHERE YOUR ACCOUNT AND WE ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT.**

## PARTIES

12.     Plaintiff Gordon is a citizen of the Commonwealth of Pennsylvania, residing in

5

the Township of Horsham in Montgomery County.  Defendants charged Plaintiff Gordon for Ancillary Products, including Payment Protection, on her Kohl's credit card without her request, informed consent and/or agreement.

13.    Plaintiff Valerie Tantlinger is a citizen of the Commonwealth of Pennsylvania, residing in the city of Greensburg in Westmoreland County.  Defendants charged Plaintiff Tantlinger for Ancillary Products, including Payment Protection, on her Kohl's credit card without her request, informed consent and/or agreement.

14.    Plaintiff Jennifer Underwood is a citizen of the State of California, residing in the city of Hanford in Kings County.  Defendants charged Plaintiff Underwood for Ancillary Products, including Payment Protection and Privacyguard, on her Kohl's credit card without her request, informed consent and/or agreement.

15.    Defendant Kohl's is a Wisconsin corporation with a principal place of business in Menomonee Falls, Wisconsin.  Kohl's is the largest American department store chain by number of stores and owns and operates approximately 1,158 stores throughout the United States. Additionally, Kohl's owns websites, including kohls.com and kohlscorporation.com where consumers shop, apply for credit cards, and receive and pay their credit card bills.  In 2013, Kohl's, had fiscal sales of over $19 billion.

16.    Defendant Capital One is a Delaware corporation with principal place of business in McLean, Virginia.  Capital One is a financial holding company with principal subsidiaries including Capital One National Association. One of the nation's 10 largest banks based on deposits, Capital One has approximately $204 billion in deposits and approximately $300 billion in total assets.  Capital One is the credit card issuer of retail private label accounts for Capital One's relationship with Kohl's.  Credit cards issued by Capital One for Kohl's bear the marks of

6

Kohl's store brand.

## FACTUAL ALLEGATIONS

**Defendants' Private Label Credit Card Joint Venture**

17.     Kohl's customers are provided with credit cards that bear the Kohl's logo upon credit approval.  The cards contain a customer service number that is answered automatically with a greeting "thank you for calling Kohl's credit customer service…."

18.     Kohl's credit card billing statements are sent in envelopes bearing the Kohl's name and logo through a see-through window.  Billing statements are also sent *via* email to consumers, who are directed to the kohls.com website to login to their Kohl's account, view their Kohl's billing statement, and make payments to Kohl's.

19.     Kohl's and Capital One have a lucrative private-label credit card partnership and revenue sharing agreement ("Private Label Agreement" or "Agreement") dated on or about August 11, 2010, effective April 1, 2011, which includes profit-sharing for the sale of ancillary credit card products and fees including "Enhancement Products" such as "Kohl's Account Ease."

20.     Under the Private Label Agreement, on or about April 1, 2011, Capital One began issuing Kohl's branded credit cards to new and existing customers after it acquired the existing private-label credit card loan portfolio from JP Morgan Chase & Company, which consisted of more than 20 million Kohl's customer accounts with an outstanding principal and interest balance of approximately $3.7 billion.

21.     Capital One's 2013 10-K disclosed its "collaborative arrangement" with Kohl's as being:

> a "contractual arrangement that involves a joint operating activity
> between two or more parties that are active participants in the activity.
> These parties are exposed to significant risks and rewards based upon
> the economic success of the joint operating activity…and risk

7

> management decisions are jointly managed by (Kohl's) and us…
> (Kohl's) has primary responsibility for handling customer service
> functions and advertising and marketing related to credit card customers
> (and) (w)e share a fixed percentage of      revenues, consisting   of
> finance charges and late fees, with the Retailer…

22.     Defendants' Private Label Agreement identifies Kohl's credit card "Enhancement

Products" as "enhancement products and services offered to Cardholders" which include

Ancillary Products.

23.     Moreover, the Agreement provided for the formation of a 6-person Management

Committee with Kohl's and Capital One each nominating 3 members.   The Management

Committee is responsible for reviewing and recommending Enhancement Products, changes to

the Account Terms, etc.

24.     Additionally, Kohl's provides marketing services, collections, and customer

service related to credit card accounts and ancillary products, including Payment Protection and

Privacyguard, and receives compensation for these services.

25.     On or about May 13, 2014, Defendants amended their Agreement to cease

offering "Kohl's Account Ease" and "Enhancement Product" to new cardholders or to any

existing cardholder that does not currently subscribe to Kohl's Account Ease.  The Amendment

dictates:

> Kohl's shall continue to record all telephone activities related to (i)
> outbound telemarketing or selling activities in respect of the Private
> Label Credit Card, the Program or any Enhancement Product, and (ii)
> requests for cancellation or termination of any Private Label Credit Card
> or any Enhancement Product (including, without limitation, the
> previously marketed debt cancellation or debt deferment service referred
> to as "Kohl's Account Ease[SM]"), and any associated retention-related
> activities, and shall, in each case, provide such recordings to Bank on a
> weekly basis or as mutually agreed by Kohl's and Bank.

26.     Under the Private Label Agreement, the imposition and collection of fees for

Ancillary Products generates a portion of the $965 million (2013), $885 million (2012) and $607 million (2011) Kohl's received from Capital One.

**Payment Protection**

27.     Defendants' Payment Protection is akin to insurance and purports to cancel a consumer's account balance, up to a certain dollar amount, in the event of a qualifying event due to involuntary unemployment, disability, hospitalization or death, provided that the accountholder continues to make at least the minimum monthly payment due on their account. Defendants charge monthly fees for Payment Protection of $1.60 per $100 of customers' ending monthly balance.

28.     In fact, just like insurance – which charges premiums for coverage – Defendants refer to the cost of their Payment Protection as "Account Ease Premium" on customers' monthly billing statements.  Additionally, a component of Defendants' product includes a death benefit like an insurance product.

29.     Notably, Defendants refer to their Payment Protection refunds as "Refund of Credit Life Insurance Fee."

30.     Defendants' Payment Protection is available in all 50 States, in the District of Columbia, Puerto Rico, the U.S. Virgin Islands and Guam.

**Payment Protection "Slamming"**

31.     Defendants engage in a series of deceptive and unfair business practices in connection with Payment Protection.  In particular, Defendants enroll and/or charge consumers for Payment Protection services absent the consumers' express affirmative request, express informed consent and/or express agreement.

32.     When enrolling and/or charging consumers for "Account Ease," Defendants

9

repeatedly failed to make clear to consumers that they were actually buying (or being charged for) a debt cancellation product.

33.     This lack of candor and disclosure is exemplified by, among other things, Defendants' failure to provide consumers with separate invoices and receipts for the purchase of Payment Protection, and the imposition of fees directly on consumers' monthly credit card statements.

**Payment Protection with Little or No Value**

34.     Payment Protection also provides little or no value to consumers, many of whom are not even eligible for its purported benefits.  For example, Payment Protection does not apply to most consumers employed part-time or who are self-employed, unemployed, disabled or retired.  Moreover, consumers pay fees/premiums for at least 90 days of coverage yet there is no coverage for the first 90 days with respect to coverage related to involuntary unemployment and disability.

35.     Additionally, even assuming for argument sake that the consumer was or could become eligible to receive benefits under the program, they would never likely file claims due to the fact that Defendants failed to meaningfully apprise those class members of the program. Moreover, despite having made payments for purported coverage, ineligible consumers who then attempted to make claims would have their claims denied through Defendant's post-claims underwriting process.

**Overcharges for Payment Protection**

36.     Defendants also impose and calculate monthly Payment Protection charges on consumers' monthly credit card balances, including the total interest charges for each month, based upon the closing date amount – rather than the average balance – of that month's billing

cycle. For example, if a Kohl's credit card customer has a $500 ending balance with $1.60 cents per $100 dollar rate, that customer is charged $8.00 for that month's Payment Protection coverage. The Payment Protection charge is uniformly based upon the balance as of the closing date of each month's billing cycle, regardless of the date on which charges to the account were incurred. As a result, consumers are overcharged because they are paying for Payment Protection during periods when there is no coverage.

37.    For example, a consumer who purchases an item on the first day of the billing cycle will be charged the exact same Payment Protection fee amount as the consumer who charged the exact same item at the exact same amount on the last date of the billing cycle. Both consumers pay the same amount even though one consumer, ostensibly, had a month of coverage and the other only one day of coverage.

38.    Also, all consumers enrolled into Payment have no coverage for unemployment or disability-based claims for 90 days but Defendants uniformly charge enrolled consumers for such non-existent coverage.

39.    Defendants' Payment Protection enrollment and/or billing practices have caused substantial and significant harm to Plaintiffs and similarly situated consumers.

**Privacyguard**

40.    Defendants marketed and sold Privacyguard, which allegedly included credit monitoring and credit report retrieval, to Plaintiff (Underwood) and other consumers. Defendants charge $14.99 per month for Privacyguard.

**Privacyguard "Slamming"**

41.    Defendants engage in a series of deceptive and unfair business practices in connection with Privacyguard. In particular, Defendants enroll and/or charge consumers for

11

Privacyguard services absent the consumers' express affirmative request, express informed consent and/or express agreement

**Privacyguard with Little or No Value**

42.     To provide the credit monitoring and credit report retrieval services, Defendants are required by the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681b, to have a "permissible purpose" to obtain Customers' credit information from the credit reporting agencies. Among other reasons, a credit reporting agency may release a credit report in accordance with a consumer's "written instructions." 15 U.S.C. § 1681b(a)(2).

43.     Accordingly, Plaintiff Underwood and other consumers who were enrolled in Privacyguard were required to provide sufficient authorization before their credit bureau reports could be accessed. Defendants failed to obtain the required consumers' authorizations and therefore, Defendants could not provide Customers the full credit monitoring and/or credit report retrieval services of the Privacyguard Product in which they were enrolled.

44.     Consumers enrolled in Defendants' Privacyguard were "unprocessable", i.e. referring to the status of a consumer who, at a given time, was being billed for Privacyguard but who, for any reason (i) was not receiving full credit monitoring; (ii) was receiving partial credit monitoring and/or credit report retrieval; and/or (iii) was not receiving credit report retrieval benefits.

45.     Nonetheless, Defendants billed the full monthly fees for Privacyguard to Plaintiff (Underwood) and consumers who paid for but were not receiving all or any of the credit monitoring and/or credit report retrieval benefits of the product.

46.     Defendants' acceptance of monthly payments, while failing to provide full credit monitoring and/or credit report retrieval services, has resulted in substantial injury to Plaintiff

(Underwood) and numerous consumers.

47.    Defendants' Privacyguard enrollment and/or billing practices have caused substantial and significant harm to Plaintiff (Underwood) and similarly situated consumers.

48.    Defendants also fail to provide consumers with clear, conspicuous and complete disclosures regarding the material terms and conditions and cost of their Ancillary Products.

49.    Notably, Defendants' advertising, enrollment, billing, and collection practices in connection with their Ancillary Products conceal the fact that that these products are optional, may be cancelled at any time, and are not required for consumers to activate or use their card, resulting in more consumers becoming unwittingly enrolled in and/or charged for these unwanted Products month after month. Moreover, Defendants fail to fully refund premiums, fees and interest charges when consumers learn of and dispute the unauthorized charges for the Ancillary Products and/or cancel their Kohl's credit cards.

### PLAINTIFF JENNIFER GORDON

50.    In or around 2011, Ms. Gordon opened a Kohl's credit card at a Kohl's department store.

51.    In or about October 2011, and without her express affirmative request, informed consent and/or agreement, Defendants enrolled Ms. Gordon into and/or charged her for "Kohl's Account Ease$^{SM}$ Premium(s)" on her monthly Kohl's credit card statement.

52.    In or about October 2013, Ms. Gordon became aware that she was being improperly charged for Kohl's Account Ease$^{SM}$, without her express affirmative request, informed consent and/or agreement.

53.    Upon becoming aware that she was being improperly charged for Payment Protection without her express affirmative request, informed consent and/or agreement, in or

13

about October 2013, Ms. Gordon requested all of her prior bills from Kohl's. Ms. Gordon was informed by a representative of Kohl's that Kohl's could only go back 25 months (i.e. to the end of 2011) and that the bills would be mailed to her.

54.   As a result of her inquiry, Ms. Gordon received 4 billing statements from Kohl's for the time period of October 2011 through February 2012. Each of the billing statements showed that "Account Ease Premium" charges were made to Ms. Gordon's account.

55.   Ms. Gordon also requested her billing statements prior to October 2011 from Kohl's, but the request was denied.

56.   From approximately October 2011 to date, Defendants have charged Ms. Gordon's account over $128.00 for "Account Ease Premiums" without her informed consent.

57.   Ms. Gordon has received no refunds from Defendants for any "Account Ease Premium" charges.

58.   Since approximately October 2011, Defendants charged Ms. Gordon approximately $1.60 per $100 of her monthly ending statement balance, irrespective of the dates on which she made purchases within the billing cycle.

59.   Defendants also charged Ms. Gordon an interest rate of approximately 22% and late fees as high as $35/month on balances that included the bogus premiums and fees charged by and paid to Defendants related to the unauthorized Payment Protection.

60.   Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment of the facts alleged herein. Defendants' knowingly concealed from Plaintiff Gordon and other consumers vital information regarding Payment Protection. Among other things, the terms and conditions of the product do not appear on Kohl's or Capital One's websites. These terms and conditions are essential to the pursuit of claims, and, as such, Plaintiff

14

Gordon and other Kohl's consumers could not reasonably have discovered the true nature of Payment Protection. Importantly, Defendants failed to adequately disclose the cost for Payment Protection, that Payment Protection is an optional product, may be cancelled at any time, and is not required in order to activate or use the Kohl's charge card.

61.     Defendants are under a continuing duty to disclose to their customers the true character, nature and cost of Payment Protection. Because of their knowing, affirmative, and active concealment of these facts, Defendants are estopped from relying on any statutes of limitation in their defense of this action.

### PLAINTIFF VALERIE TANTLINGER

62.     Several years ago, Ms. Tantlinger opened a Kohl's credit card at a Kohl's department store.

63.     In or about June 2013, and without her express affirmative request, informed consent and/or agreement, Defendants enrolled Ms. Tantlinger into and/or charged her for "Kohl's Account Ease$^{SM}$ Premium(s)" on her monthly Kohl's credit card statement.

64.     In or about June 2013, Ms. Tantlinger became aware that she was being improperly charged for Kohl's Account Ease$^{SM}$, without her express affirmative request, informed consent and/or agreement.

65.     Upon becoming aware of the improper charges in or about June 2013, Ms. Tantlinger complained of the unauthorized charges and inquired of Kohl's regarding why she was being charged without her express affirmative request, informed consent and/or agreement. Further, Ms. Tantlinger requested all of her prior bills from Kohl's.

66.     A representative from Kohl's informed Ms. Tantlinger that she became enrolled in Kohl's Account Ease$^{SM}$ in 2011. However, when Ms. Tantlinger requested affirmative proof

that she enrolled in Kohl's Account Ease<sup>SM</sup> she received no response from Kohl's.

67.     As a result of the unauthorized billing and enrollment, Ms. Tantlinger requested a full refund of the fees she had previously paid associated with Kohl's Account Ease<sup>SM</sup>. Despite her request for a full refund, on or about July 11, 2013 Kohl's provided a refund of only $35.98 as a "refund of credit life insurance."

68.     From approximately May 2012 to date, Defendants have charged Ms. Tantlinger's account over $112.00 for "Account Ease Premiums" without her informed consent.

69.     Ms. Tantlinger has received no refunds from Defendants for any "Account Ease Premium" charges.

70.     Since approximately May 2012, Defendants charged Ms. Tantlinger approximately $1.60 per $100 of her monthly ending statement balance, irrespective of the dates on which she made purchases within the billing cycle.

71.     Defendants also charged Ms. Tantlinger an interest rate of approximately 22% and additional fees on balances that included the bogus premiums and fees charged by and paid to Defendants related to the unauthorized Payment Protection.

72.     Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment of the facts alleged herein. Defendants' knowingly concealed from Plaintiff Tantlinger and other consumers vital information regarding Payment Protection. Among other things, the terms and conditions of the product do not appear on Kohl's or Capital One's websites. These terms and conditions are essential to the pursuit of claims, and, as such, Plaintiff Tantlinger and other Kohl's consumers could not reasonably have discovered the true nature of Payment Protection. Importantly, Defendants failed to disclose that Payment Protection is an optional product, may be cancelled at any time, and is not required in order to

activate or use the Kohl's charge card.

73.     Defendants are under a continuing duty to disclose to their customers the true character, nature and cost of Payment Protection.  Because of their knowing, affirmative, and active concealment of these facts, Defendants are estopped from relying on any statutes of limitation in their defense of this action.

### PLAINTIFF JENNIFER UNDERWOOD

74.     Years ago, Ms. Underwood opened a Kohl's credit card at a Kohl's department store.  In or about May 2011 and without her express affirmative request, informed consent and/or agreement Defendants enrolled Ms. Underwood into and/or charged her for "Kohl's Account Ease$^{SM}$ Premium(s)" on her monthly Kohl's credit card statement.

75.     At that time, Ms. Underwood was a full-time student, not employed, and therefore was *per se* ineligible for unemployment or disability benefits under Defendants' Payment Protection program.

76.     In or about April 2011 and without her informed consent, Defendants enrolled Ms. Underwood into and/or charged her for Privacyguard on her monthly Kohl's credit card statement.

77.     The last time Ms. Underwood made a purchase using her Kohl's charge was on August 17, 2011.

78.     On or about October 13, 2011, Ms. Underwood paid the account balance on her Kohl's charge, in full.  Unbeknownst to Ms. Underwood, Defendants charged her account for Ancillary Products (including "Account Ease Premium(s)" and "Privacyguard") late fees, and interest despite the fact that she had paid her balance in full and made no further charges to her account.

79.     Ms. Underwood made no payment to her Kohl's account in November 2011 because she believed her account had a zero balance.

80.     Ms. Underwood was unaware of the mounting unauthorized charges to her account until on or about December 29, 2011, when she discovered an outstanding balance plus late fees, she paid the new balance, $71.44 (comprised of fees for Privacyguard, Account Ease premium, late fee, agent assist payment fee and interest on the fees).

81.     Ms. Underwood made no payment to her account January – April 2012 because she believed she had a zero balance.

82.     In or about April 2012, Ms. Underwood was surprised to receive a call from a Kohl's representative, informing her that she had outstanding balance of over $100 on her account.

83.     Upon inquiry, Ms. Underwood was shocked to discover that the charges were unauthorized and were for Privacyguard, Account Ease Premiums, late fees and interest on the fees and ancillary product charges.

84.     After learning about the bogus charges, Ms. Underwood promptly complained to Kohl's and cancelled and closed her Kohl's credit card account.

85.     Without her authorization, knowledge or informed consent, Defendants charged Ms. Underwood's "closed" account $14.99 on or about May 10, 2012 and $14.99, on or about June 10, 2012 and also assessed her account a late fee on or about June 2, 2012.

86.     On or about June 22, 2012 Ms. Underwood again paid the outstanding balance on her account for more unauthorized Ancillary Product charges and related fees to her "closed" account.

18

87.     From approximately April/May 2011 to date, Defendants have charged Ms. Underwood's account over $25.00 for "Account Ease Premiums" (since May 2011) and nearly $200.00 for "Privacyguard" (since April 2011) without her informed consent.

88.     Ms. Underwood has received no refunds from Defendants for any "Account Ease Premium" or "Privacyguard" charges.

89.     From approximately May 2011 thru April 2012 or later, Defendants charged Ms. Underwood approximately $1.60 per $100 of her monthly ending statement balance for Payment Protection, irrespective of the dates on which she made purchases within the billing cycle.

90.     Since approximately April 2011, Defendants charged Ms. Underwood approximately $14.99 every month for Privacyguard until sometime in 2012, including months after she cancelled her Kohl's credit card.

91.     In total, since April 2011, Ms. Underwood paid over $200.00 in unauthorized premiums/fees, exclusive of interest and late fees, for services she never knowingly enrolled into, did not authorize charges for, and/or for which she was ineligible.

92.     Defendants also charged Ms. Underwood an interest rate of approximately 22% and late fees as high as $35/month on balances that included the bogus premiums and fees charged by and paid to Defendants related to the unauthorized Payment Protection and Privacyguard.

93.     In or around October 2014, Ms. Underwood ordered her credit report and was shocked to discover a negative report filed by Defendants regarding her Kohl's credit card account.

94.     Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment of the facts alleged herein. Defendants' knowingly concealed from