# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JENNIFER GORDON, VALERIE TANTLINGER and
JENNIFER UNDERWOOD, on Behalf of Themselves
and All Others Similarly Situated,

        Plaintiffs,

        v.

KOHL'S DEPARTMENT STORES, INC. and
CAPITAL ONE, N.A.,

        Defendants.

**CIVIL ACTION**

**Case No.: 2:15-cv-00730-WB**

**MEMORANDUM IN
SUPPORT OF MOTION TO
COMPEL INDIVIDUAL
ARBITRATION OF CLAIMS
OF PLAINTIFFS
TANTLINGER AND
UNDERWOOD AND TO
STAY LITIGATION AS TO
PLAINTIFFS TANTLINGER
AND UNDERWOOD**

Martin C. Bryce, Jr. (PA Bar ID 156882)
bryce@ballardspahr.com
Daniel JT McKenna (PA Bar ID 230387)
mckennad@ballardspahr.com
Sarah Schindler-Williams (PA Bar ID 314934)
schindlerwilliamss@ballardspahr.com
Joseph J. Schuster (PA Bar ID 318048)
schusterj@ballardspahr.com

BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999

*Attorneys for Defendant Kohl's Department Stores.*

Dated:  May 19, 2015

Defendant Kohl's Department Stores, Inc. ("Kohl's" or "Defendant") submits this Memorandum of Law in Support of its Motion to Compel Individual Arbitration of the claims asserted by Plaintiffs Tantlinger and Underwood and to stay the litigation as to those Plaintiffs.

I.   **INTRODUCTION**

Plaintiffs allege that they were enrolled in Kohl's Account Ease ("KAE") absent their "informed consent" at or around the time that they opened store-branded Kohl's credit card accounts.  Plaintiffs allege that their enrollment violated the Virginia Consumer Protection Act ("VCPA") and breached the implied covenant of good faith and fair dealing and that Kohl's has been unjustly enriched by the collection of fees associated with KAE.[1]

Ms. Tantlinger and Ms. Underwood are subject to arbitration agreements with class action waivers contained in their respective Cardmember Agreements.  The arbitration provisions cover Plaintiffs' claims and obligate Plaintiffs to advance their KAE claims in individual arbitration.  (Declaration of Jonathan Wallgren ("Wallgren Declaration") at Ex. 4, 2006 Cardmember Agreement [hereinafter "2006 Cardmember Agreement"] at § 21; Ex. 7, 2008 Cardmember Agreement [hereinafter "2008 Cardmember Agreement"] at § 21).[2]

---

[1]    Defendant also believes Plaintiffs Tantlinger and Underwood released their claims as members of the settlement class in *Kardonick v. JP Morgan Chase & Co.*, 10-cv-23235 (S.D. Fla.) and, pursuant to the Court's instruction, has filed a motion to dismiss the Plaintiffs' KAE claims pursuant to the *Kardonick* settlement (the "*Kardonick* Motion").  Should the Court decline to enforce Tantlinger's and Underwood's arbitration agreements it should still bar relitigation of their KAE claims pursuant to the *Kardonick* Motion and/or dismiss Plaintiffs claims on the merits as addressed in Defendants' motion to dismiss any and all remaining claims.

[2]    The Court may properly review these agreements in deciding a motion to compel arbitration.  As the Third Circuit succinctly explained, the FAA requires a court to engage:

in a limited review to ensure that the dispute is arbitrable, i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement. . . .  If . . . the court determines that an agreement exists and that the dispute falls within the scope of that agreement, it then

II.     **FACTUAL ALLEGATIONS**

    A.     **Plaintiffs' Complaint.**

Plaintiffs filed a putative Class Action Complaint alleging violations of the VCPA and breach of the implied covenant of good faith and fair dealing purportedly "inherent" in Plaintiffs' KAE agreements.  Plaintiffs further allege that Kohl's has been unjustly enriched by the collection of fees associated with KAE and seek compensatory and punitive damages, rescission of their agreements and a declaration that Kohl's "conduct . . .is in violation of federal and various states' statutory and common law, and enjoining Kohl's from continuing such conduct." (Compl. at ¶ 159.)

    B.     **Plaintiffs' Agreed to Arbitrate their Claims.**

Valerie Tantlinger opened her Kohl's credit card account in a Kohl's store in March 2007.  (Compl. at ¶ 62); (Wallgren Decl. at ¶ 9.)  Jennifer Underwood opened her Kohl's credit card account in a Kohl's store in January 2009.  (Compl. at ¶ 74); (Wallgren Decl. at ¶ 12.)  At or around the time that they opened Kohl's credit card accounts, Ms. Tantlinger and Ms. Underwood were enrolled in KAE.  (Compl. at ¶¶ 63 & 74;) (Wallgren Decl. at ¶¶ 11, 14;) (*see also id.* at Exs. 6, 9.)  When Ms. Tantlinger and Ms. Underwood signed up for their Kohl's credit cards and enrolled in KAE, they were provided with Cardmember Agreements, which provided that use of the accounts constitutes acceptance.  *See* (2008 Cardmember Agr. at ¶ 3 ("use of this Account, is your consent to the terms of this Agreement . . .and your acknowledgement of

---

      must refer the matter to arbitration without considering the merits
      of the dispute.

*PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990) (citations omitted) *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002).

delivery of a copy of this Agreement to you.")[3]  Ms. Tantlinger and Ms. Underwood each admit

using their credit cards (Compl. at ¶¶ 70 & 78) thereby accepting the terms of their Cardmember

Agreements.

The Cardmember Agreements that Ms. Tantlinger and Ms. Underwood agreed to

contained arbitration provisions.  (2006 Cardmember Agr. at ¶ 21); (2008 Cardmember Agr. at

¶ 21).  The arbitration provisions state that the Federal Arbitration Act ("FAA") applies.  (*Id.*).

The arbitration provisions broadly define claims to include:

> all claims, **based on contract, tort, fraud,** and other intentional
> torts, **statute, common law, and equity**, and including
> counterclaims, cross claims, and **third party claims** arising from
> or relating to (i) advertisements and promotions about your
> Account or Accounts generally, **goods or services financed under
> your Account, and the terms of financing,** (ii) the Application
> for your Account, (iii) the terms and the disclosures given in
> connection with the opening and administration of your Account
> and this Agreement, and (iv) the monthly statements for your
> Account. This Section 21 will not apply to Claims made in
> lawsuits filed before we delivered this Agreement to you.
> However, this Section 21 will apply to all other Claims, even if the
> facts and circumstances giving rise to the Claim existed before we
> or Kohl's delivered this Agreement to you.

 (2008 Cardmember Agr. at ¶ 21 (emphasis added)); *also* (2006 Cardmember Agr. at ¶ 21).[4]  The

arbitration provisions expressly apply to any claims asserted against Kohl's and require Ms.

Tantlinger and Ms. Underwood to pursue all such claims in binding arbitration.  The relevant

provisions state:

---

[3]     The 2006 Cardmember Agreement is substantially similar to the Agreement from the
2008 Cardmember Agreement.

[4]     The arbitration agreement in the 2006 Cardmember Agreement is substantially identical
to the arbitration agreement from the 2008 Cardmember Agreement.

> B. You or we have the right to require that each Claim be resolved
> by arbitration. In this Section 21, we means Chase Bank USA,
> N.A., Kohl's Department Stores, Inc. and their respective parents,
> affiliates, successors, and assigns. A Claim will be arbitrated if (a)
> both we and you or (b) only one or the other of you, or we exercise
> the right to require that the Claim be arbitrated.

(2008 Cardmember Agr. at ¶ 21); *also* (2006 Cardmember Agr. at ¶ 21).

The arbitration provisions also require Ms. Tantlinger and Ms. Underwood to bring their

claims on an individual basis.  The arbitration provision contains the following class action

waiver:

> C. If we or you request arbitration of a Claim, we and you
> will not have the right to litigate the Claim in court. This
> means (1) there will be no jury trial on the claim, (2) there
> will be no pre-arbitration discovery except as the Rules
> permit, **(3) no Claim may be arbitrated on a class-action
> basis**, and neither we nor you will have the right to
> participate as a representative or member of any class of
> claimants pertaining to any Claim subject to arbitration or
> act as a private attorney general in court or in arbitration.

(2008 Cardmember Agr. at ¶ 21 (emphasis added)); *also* (2006 Cardmember Agr. at ¶ 21).

Ms. Tantlinger's and Ms. Underwood's KAE claims are covered under the broad

language of their arbitration agreements.  Accordingly, this Court should compel individual

arbitration with respect to those claims brought by Ms. Tantlinger and Ms. Underwood.

## III.   <u>ARGUMENT</u>

### A.   <u>Plaintiffs Should Be Compelled To Arbitrate Their Claims.</u>

#### 1.   <u>The Federal Arbitration Act Applies To This Action.</u>

The FAA applies to Plaintiffs' arbitration agreements.  (2006 Cardmember Agr. at ¶ 21);

(2008 Cardmember Agr. at ¶ 21).  The FAA provides that arbitration agreements are enforceable

according to their terms:

> A written provision in any maritime transaction or a
> contract evidencing a transaction involving commerce to

> settle by arbitration a controversy thereafter arising out of
> such contract or transaction, or the refusal to perform the
> whole or any part thereof, or any agreement in writing to
> submit to arbitration an existing controversy arising out of
> such a contract, transaction, or refusal, shall be valid,
> irrevocable, and enforceable, save upon such grounds as
> exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Moreover, the transaction at issue in this case easily meets the "involving commerce" requirement. The Act defines "commerce" as "commerce among the several states." 9 U.S.C. § 1. "[T]he word 'involving' . . . signals an intent to exercise Congress' commerce power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction . . . turn[s] out, in fact, to have involved interstate commerce." *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 277 (1995) (emphasis in original). Plaintiffs and Defendant are citizens of different states. Ms. Tantlinger is a resident of Pennsylvania (Compl. ¶ 13), Ms. Underwood is a resident of California (Compl. ¶ 14) and Plaintiffs allege that Kohl's is a "resident" of Wisconsin (Compl. ¶ 15). In addition, Ms. Tantlinger and Ms. Underwood admit to willingly opening and using their accounts (Compl. ¶¶ 62, 70, 74 & 77), which indisputably constitutes "commerce" within the meaning of section 2 of the FAA. *See, e.g., Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 560 n.1 (N.D. Ohio 2004) ("loan transactions historically have been evaluated under the FAA because of the banking industry's connection to commerce"); *Providian Nat'l Bank v. Screws*, 894 So.2d 625, 627 (Ala. 2003) (credit card agreement between bank and the holders of its credit card clearly involves interstate commerce); *Roberson v. Money Tree of Ala., Inc.*, 954 F. Supp. 1519, 1523 (M.D. Ala. 1997) (interstate commerce existed where loans of Alabama borrowers were approved in Georgia and proceeds were wired from Georgia); *Staples v. Money Tree, Inc.*, 936 F. Supp. 856 (M.D. Ala. 1996) (loan transaction involving out of state lenders was a transaction involving commerce subject to the FAA).

Further evidence of interstate commerce is provided by the arbitration provisions themselves, which expressly provide that they are governed by the FAA.  (2006 Cardmember Agr. at ¶ 21); (2008 Cardmember Agr. at ¶ 21).  Courts consider such language evidence of the satisfaction of the interstate commerce requirement.  *Staples*, 936 F. Supp. at 858; *Thomas O'Connor & Co. v. Ins. Co. of North America,* 697 F. Supp. 563, 566 (D. Mass. 1988); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989) (courts must "rigorously enforce [arbitration] agreements according to their terms.").

Thus, the FAA applies to Plaintiffs' arbitration agreements, and those agreements should be upheld and enforced by the court.  *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999).

> ## 2.     Plaintiff's Claims Fall Squarely Within The Scope Of The Arbitration Agreements.

Federal law strongly favors the arbitration of disputes and the enforcement of arbitration agreements.  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000).  Congress enacted the FAA to reverse centuries of judicial hostility to arbitration agreements by placing them on the same footing as other contracts.  *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 7 F.3d 1110, 1113 (3d Cir. 1993).

If a party refuses to participate in arbitration, the FAA requires the Court to order the parties "to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The FAA further provides that:

> if any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial

of the action until such arbitration has been had in accordance with
the terms of the agreement.

9 U.S.C. § 3.

As continually reaffirmed by the Supreme Court, federal law strongly favors the
arbitration of disputes and the enforcement of arbitration agreements and dictates that a
presumption of arbitrability exists where a contract contains an arbitration clause  *AT&T
Technologies, Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986); *Circuit City Stores, Inc.
v. Adams*, 532 U.S. 105 (2001); *Randolph v. Green Tree Financial Corp.*, 531 U.S. 79, 89
(2000); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995); *Moses H. Cone
Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The presumption in favor of
arbitrability "is particularly strong when the arbitration clause in question is broad," *Miron v.
BDO Seidman, LLP*, 342 F.Supp. 2d 324, 328 (E.D.Pa. 2004)*,* as it is in this case.  Indeed, the
Supreme Court in *Randolph* has made clear that "the party resisting arbitration bears the burden
of proving that the claims at issue are unsuitable for arbitration." 531 U.S. at 91.

Plaintiffs' claims are clearly covered under the broad language of their arbitration
agreements.

### a.      The Arbitration Agreements Are Valid And Enforceable.

Plaintiffs, of course, bear the heavy burden of proving that the arbitration agreements are
invalid in some way, one they cannot satisfy here.  *See Randolph*, 531 U.S. at 92; *Howard v.
Wells Fargo Minnesota, N.A.*, No. 05-CV-2821, 2007 WL 2778664, at *3 (N.D. Ohio, Sept. 21,
2007).  Courts may only invalidate arbitration agreements based upon generally applicable
contract defenses.  9 U.S.C. § 2; *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996).
However, such challenges must be directed specifically and solely to the arbitration agreement
and may not be advanced in such a manner that would subject arbitration agreements to special

scrutiny.  *See, e.g., Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448-449 (2006); *Prima Paint*, 388 U.S. at 403-04.  Plaintiffs have not presented, and cannot present, any viable challenge to their arbitration agreements.

It has long been well-settled law that the merits <u>cannot</u> be considered when deciding an arbitration petition.  *See*, *e.g.*, *AT&T Technologies,* 475 U.S. at 649.  As the Third Circuit succinctly explained, the FAA requires a court to engage "in a limited review to ensure that the dispute is arbitrable, i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement. . . .  If . . . the court determines that an agreement exists and that the dispute falls within the scope of that agreement, it then must refer the matter to arbitration without considering the merits of the dispute."  *PaineWebber*, 921 F.2d at 511 (citations omitted).

The United States Supreme Court has specifically held that a court may only consider challenges directed specifically and solely to the arbitration agreement.  *Cardegna*, 546 U.S. at 448-449; *Prima Paint*, 388 U.S. at 403-04.  Thus, an arbitration agreement must be upheld and enforced by the courts even though the rest of the contract may later be held invalid by the arbitrator.  *Prima Paint*, 388 U.S. at 404; *Harris*, 183 F.3d at 179.

There can be no dispute that written arbitration agreements exist.  (2006 Cardmember Agr. at ¶ 21); (2008 Cardmember Agr. at ¶ 21).  Further, the Third Circuit has generally held that arbitration agreements in credit contracts are valid and enforceable.  *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 623-25 (3d Cir. 2009).

Moreover, there can be no serious dispute that the arbitration agreements here are valid and fully enforceable under the FAA.  Ms. Tantlinger and Ms. Underwood admit that they willingly opened Kohl's credit card accounts.  (Compl. at ¶¶ 62, 74.)  The Cardmember

Agreements provided to Ms. Tantlinger and Ms. Underwood when they opened their accounts contained the arbitration provisions and expressly provided that use of the account constitutes acceptance of those terms. (*E.g.* 2008 Cardmember Agr. at ¶ 3 ("use of this Account, is your consent to the terms of this Agreement . . .and your acknowledgement of delivery of a copy of this Agreement to you.").) Ms. Tantlinger and Ms. Underwood each admits to using her card (Compl. at ¶¶ 70 & 78) thereby accepting the terms of the Cardmember Agreement.

Significantly, the arbitration agreement has been enforced by courts, including in a similar context involving claims raised after the arbitration provision was prospectively removed from Kohl's cardmember agreements[5] since the claim was predicated upon conduct that occurred prior to the removal of the arbitration provisions. *Ineman v. Kohl's Corp.* No. 14-CV-398-WMC, 2015 WL 1399052 (W.D. Wis. Mar. 26, 2015). In *Ineman*, the Court found that the class representative's claims were subject to the mandatory arbitration because they were principally based on conduct that arose prior to the removal of the arbitration agreement from the Cardmember agreement notwithstanding the fact that the claims were first alleged after the arbitration provision had been removed. *Id*. at *7-11.

### b.   The Complaint Falls Within The Scope Of The Arbitration Provision.

"The FAA mandates that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bannett v. Hankin*, 331 F. Supp. 2d 354, 360 (E.D. Pa. 2004) (quoting *Moses*, 460 U.S. at 24-25). Accordingly, the United States Supreme Court has held that "a presumption of arbitrability exists where a contract contains an arbitration clause, and that an

---

[5]   The arbitration provision was removed from all Kohl's Cardmember agreements effective October 15, 2010, (Wallgren Decl. at ¶ 16, Ex. 10), however, the removal only affects claims that accrue after October 15, 2010. Because Ms. Tantlinger's and Ms. Underwood's KAE claims stem from the opening of their accounts and their enrollment in KAE, which occurred well before October 15, 2010, the arbitration agreement in force at that time applies.

order to arbitrate should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.'" *Miron,* 342 F. Supp. 2d at 328 (quoting *AT&T Technologies,* 475 U.S. at 650).  The presumption in favor of arbitrability "is particularly strong when the arbitration clause in question is broad," *id.*, as it is in this case.  *See also Bannett*, 331 F. Supp. 2d at 360.

Moreover, in addition to the strong presumption of arbitrability, Plaintiff's claims are clearly covered under the broad language of the Arbitration Agreement.

The arbitration agreements broadly provide for the arbitration of:

> [A]ll claims, disputes, and controversies between you and us arising from or **relating to (1) this Agreement** (including but not limited to the validity, scope, and enforceability of this Section 21), your Account, or any balance on your Account and (2) any prior agreement you may have had with us or Kohl's relating to your Account or any balance on your Account. **The word Claim will be given the broadest possible meaning. For example, and without limitation, Claim includes all claims, based on contract, tort, fraud, and other intentional torts, statute, common law, and equity, and including** counterclaims, cross claims, and **third party claims** arising from or relating to (i) advertisements and promotions about your Account or Accounts generally, **goods or services financed under your Account, and the terms of financing**, (ii) the Application for your Account, **(iii) the terms of and the disclosures given in connection with the opening and administration of your Account and this Agreement**, and (iv) the monthly statements for your Account. This Section 21 will not apply to Claims made in lawsuits filed before we delivered this Agreement to you. However, this Section 21 will apply to all other Claims, even if the facts and circumstances giving rise to the Claim existed before we or Kohl's delivered this Agreement to you.

(2008 Cardmember Agr. at ¶ 21 (emphasis added)); (*also* 2006 Cardmember Agr. at ¶ 21).

Plaintiffs assert common law and statutory claims predicated upon the application for and enrollment in KAE, the terms and disclosures of KAE and the fees associated with that product. (Compl. ¶ 102.)  Those claims clearly "relate to [the Cardmember] Agreement" and, therefore,

squarely fall within the scope of the arbitration provision.  *See*, *e.g.*, *Berkery v. Cross Country Bank*, 256 F. Supp.2d 359, 367 (E.D. Pa. 2003).

Accordingly, because a valid agreement to arbitrate covers Plaintiff's claims, Plaintiffs should be compelled to pursue their claims in arbitration.  *See*, *e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985) (holding that arbitration should be compelled where a valid arbitration agreement exists that covers the claims at issue).

### B.    The Arbitration Provision Requires Individual Arbitration.

Plaintiffs should be compelled to arbitrate their claims on an individual, and not a class-wide, basis.  Ms. Tantlinger and Ms. Underwood agreed:

> no Claim may be arbitrated on a class-action basis, and neither we nor you will have the right to participate as a representative or member of any class of claimants pertaining to any Claim subject to arbitration or act as a private attorney general in court or in arbitration.

(2006 Cardmember Agr. at ¶ 21); (2008 Cardmember Agr. at ¶ 21).

The FAA requires that the Court enforce the agreement to arbitrate on an individual basis.  "Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1744 (2011).  "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."  *Stolt-Nielsen v. AnimalFeeds Internat. Corp.*, 559 U.S. 662, 664 (2010).  "[C]lass arbitration, to the extent it is manufactured by [state statute, policy or legal rule] rather than consensual, is inconsistent with the FAA."  *Concepcion*, 131 S. Ct. at 1751.

Since *Concepcion* was decided, courts have repeatedly held the FAA requires that agreements to arbitrate on an individual basis be enforced notwithstanding state law favoring or

promoting class actions.[6]   As the Third Circuit explained, "[w]e understand the holding of *Concepcion* to be both broad and clear:  a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether class arbitration 'is desirable for unrelated reasons.'"  *Litman v. Cellco P'ship*, 655 F.3d 225, 231 (3d Cir. 2011) (quoting *Concepcion*, 131 S. Ct. at 1753).

Thus, and in light of the class action waivers contained in Plaintiffs' arbitration agreements, Plaintiffs should be compelled to arbitrate their claims on an individual basis.

### C.     The Court Should Stay the Claims of Plaintiffs Tantlinger and Underwood Pending Arbitration.

If the Court grants this motion, it should stay the claims of Plaintiffs Tantlinger and Underwood pending arbitration.  The FAA provides that a Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement …"  9 U.S.C. § 3.  An order of stay is mandatory if the court determines the claims at issue in the lawsuit are arbitrable.  *See Moses H. Cone Mem. Hosp.*, 460 U.S. at 26-27 n. 34; *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004).  Accordingly, the Court should stay the claims of Plaintiffs Tantlinger and Underwood until the arbitration is completed.

### IV.     CONCLUSION

For all of the foregoing reasons, Defendant Kohl's respectfully requests that the Court grant its Motion to Compel Arbitration and enter an Order compelling Ms. Tantlinger and Ms.

---

[6]     *See, e.g., Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 233 (3d Cir. 2012); *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 932-37 (9th Cir. 2013); *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1233-36 (11th Cir. 2012); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1212-13 (11th Cir. 2011); *Brown v. TrueBlue, Inc.*, 1:10-CV-0514, 2011 WL 5869773, at *4-5 (M.D. Pa. Nov. 22, 2011).

Underwood to arbitrate their claims on an individual basis and staying this action as to those

Plaintiffs pending completion of arbitration.

Respectfully submitted,

Dated:  May 19, 2015                    /s/ *Martin C. Bryce, Jr.*
                                        Martin C. Bryce, Jr.
                                        Daniel JT McKenna
                                        Sarah Schindler-Williams
                                        Joseph J. Schuster
                                        BALLARD SPAHR LLP
                                        1735 Market Street, 51st Floor
                                        Philadelphia, PA  19103-7599
                                        Telephone: 215.665.8500
                                        Facsimile: 215.864.8999

                                        *Attorneys for Defendant Kohl's Department Stores, Inc.*