IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER GORDON, VALERIE TANTLINGER, and JENNIFER UNDERWOOD, on behalf of themselves and all others similarly situated,<br>　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>KOHL'S DEPARTMENT STORES, INC. and CAPITAL ONE FINANCIAL CORPORATION,<br>　　　　　　　Defendants. | CIVIL ACTION<br><br>NO.  15-730 |

## MEMORANDUM OPINION

This putative class action arises out of the issuance of credit cards by Kohl's Department Stores, Inc. ("Kohl's") and Capital One Financial Corporation ("Capital One") to Jennifer Gordon, Valerie Tantlinger, Jennifer Underwood and, more particularly, out of certain payment protection and credit monitoring programs in which Defendants enrolled Plaintiffs in connection with those credit cards.  Plaintiffs allege, *inter alia*, that they were enrolled in the programs without informed consent and that the programs had little or no value.  They claim violations of the Virginia Consumer Protection Act of 1977, breach of the covenant of good faith and fair dealing, unjust enrichment, rescission, and declaratory relief.

Before the Court is Defendant Kohl's Motion to Compel Arbitration pursuant to Fed. R. Civ. P. 12(b)(6).[1]  Kohl's moves to arbitrate Tantlinger's and Underwood's claims against it on the ground that the Plaintiffs' claims are subject to a provision in the original cardholder

---

[1] Defendant Capital One does not join in the motion.  The motion is directed solely at Plaintiffs Tantlinger and Underwood and not at Plaintiff Gordon.  Kohl's seeks to compel arbitration of only the Kohl's Account Ease (KAE) claims but not of PrivacyGuard claims, a service also at issue in this litigation that purports to protect a consumer's identity through credit monitoring and credit report retrieval services.  Amended Complaint ¶ 3.

1

agreements between the parties that require arbitration of claims and forbids class actions. Plaintiffs contend that their claims are governed instead by a notice that Kohl's issued on October 10, 2010 changing the terms of those agreements to eliminate the arbitration provision and the class action waiver (together the "Arbitration Provision").

## I.     FACTUAL BACKGROUND

Plaintiffs Valerie Tantlinger and Jennifer Underwood were cardholders of private label credit cards branded and serviced by Defendant Kohl's and originally issued by Chase Bank America, N.A.  Compl. ¶¶ 9, 11.  In connection with their credit card accounts, Tantlinger and Underwood were enrolled in a payment protection plan called Kohl's Account Ease ("KAE").  A "Kohl's Account Ease Summary Benefits and Disclosure" set out in the 2006 credit card agreement which was in effect when Tantlinger applied for her card[2] described the plan as follows:

> **Kohl's Account Ease** (KAE) plan is an <u>optional</u> amendment to your Cardmember Agreement under which we may cancel the balance on your Account up to a maximum of $10,000. The Plan works when you, your Spouse or Domestic Partner, an Authorized User of your Account, or a Higher Wage Earner in your Household Experience a qualifying:
>
> - Involuntary Unemployment
> - Disability
> - Hospitalization
> - Loss of Life
>
> **COST OF THE PLAN**
> The Cost is $ 1.60 per $100 (including fractional amounts) of your ending monthly statement balance and will be conveniently billed to your credit card. When you do not have a balance there is no charge.

---

[2] Applicants were provided with the credit card agreement at the time they submitted their applications. Wallgren Declaration ¶¶ 10, 13.  The Cardholder agreements submitted to the Court were those in place at the time Tantlinger and Underwood obtained their credit cards.  Wallgren Decl. ¶¶ 6, 10.  Although signed copies of the Plaintiffs' credit card agreements were not provided to the Court, the parties have agreed for the purposes of the present motion that the form documents are accurate copies of the original credit agreements governing the Plaintiffs' accounts.  Hrg. Tr. at 15.

> **30-DAY MONEY-BACK GUARANTEE**
> After you enroll, you will receive an Amendment to the Cardmember Agreement with complete details about the Plan.[3]  If you are not completely satisfied you will have 30 days to cancel and receive a full refund of any Plan fees paid. . . .

Declaration of Jonathan Wallgren Ex. 4 at 1 ("Wallgren Decl.") (footnote omitted).

The application form that was in use in 2008 when Underwood applied for her Kohl's credit card contained the same terms with the exception that it provided a specific time frame in which the applicant would receive the Amendment to the Cardholder Agreement after approval of their credit card application.  Wallgren Decl. Ex. 7 at 1.  In both versions of the KAE description, the KAE charge was based upon the balance as of the closing date of each month's billing cycle regardless of the date on which charges to the account were incurred.  Compl. ¶ 2.  If no month-end balance existed, KAE was not charged.  Wallgren Decl. Ex. 4 at 1.

Tantlinger opened her Kohl's credit card account in March 2007.  Compl. ¶ 9.  According to Kohl's records, Tantlinger first was enrolled in KAE on March 10, 2007.  Wallgren Decl. ¶ 11 & Ex. 6.  However, the first date on which the evidence presented reflects that Tantlinger incurred a charge for KAE is over five years later on May 11, 2012.  *Id.*  Underwood opened her Kohl's credit card account and was enrolled in KAE on January 12, 2009.  *Id*. Ex. 8.  And, the first date on which the evidence presented reflects that Underwood incurred a charge for KAE was just over a year later on February, 4, 2010.  *Id*.  Underwood has limited her claim, however, to fees charged after April 1, 2011.  Compl. ¶¶ 9-10, 27.

The cardholder agreements contained a provision allowing Kohl's or the Cardholder to elect to have any claim resolved by arbitration.  Wallgren Decl. Ex 4 at 1, Ex 7 at 1.  The agreements defined "claim" broadly as:

---

[3]  Neither party has submitted to the Court the Amendment to the Cardholder Agreement referred to in the "Money-Back Guarantee" paragraph of the description.

3

> all claims, based on contract, tort, fraud, and other intentional torts, statute, common law, and equity, and including counterclaims, cross claims, and third party claims arising from or relating to (i) advertisements and promotions about your Account or Accounts generally, goods or services financed under your Account, and the terms of financing, (ii) the Application for your Account, (iii) the terms of and the disclosures given in connection with the opening and administration of your Account and this Agreement, and (iv) the monthly statements for your Account. This paragraph 20 [sic] will not apply to Claims made in lawsuits filed before we delivered this Agreement to you. However, this paragraph 20 [sic] will apply to all other Claims, even if the facts and circumstances giving rise to the Claim existed before we or Kohl's delivered this Agreement to you.

*Id*. Ex. 4, at 1, Ex 7 at 1. The agreements also contained a provision prohibiting the parties from resolving any dispute through a class action. Wallgren Decl. Ex 4 at 2, Ex 7 at 2.

The agreements gave Kohl's the ability to change their terms unilaterally:

> Change in this Agreement: We may add or delete a term or change any term of this Agreement, including the rate of Finance Charge, by furnishing you notice of the change in the manner required by applicable law. To the extent permitted by applicable law, any new terms may at our option be applied to any balance existing on the Account at the time of the change, as well as to any subsequent transactions.

*Id*. Ex. 4 at 1, Ex 7 at 1.

Kohl's exercised its right to change terms in an October 10, 2010 letter. The letter stated that, effective October 15, 2010, "[w]e are removing the Arbitration section from your Agreement." Wallgren Decl. Ex 10. Additionally, the notice advised cardholders that they "have the right to reject the changes" by calling the phone number or writing to the address listed in the letter. *Id.* It further stated that "[i]f you do reject the changes, you will not be able to use your account for new transactions." *Id.* Both Tantlinger and Underwood accepted the changes by incurring additional charges on their accounts after October 15, 2010. Compl. ¶¶ 10, 13.

At the time Plaintiffs applied for their credit cards, the cards were serviced by Kohl's but were issued by Chase Bank. *Id.* Ex. 4 at 1. In 2010, Defendant Capital One purchased Chase's rights in the Kohl's private label credit card program. Opp. Ex. A at 7. Plaintiffs have

4

submitted, and Kohl's has not challenged, a 2010 Private Label Credit Card Program Agreement between Kohl's and Capital One, entered into in connection with the sale from Chase to Capital One, in which Kohl's undertook to send Kohl's branded credit card holders up-to-date "descriptions of the terms and conditions of the Accounts." *Id*. at § 2.4(a). Although Plaintiffs contend that the terms of the document Kohl's was to send out superseded those previously governing Plaintiffs' credit cards, Opp. at 3, no such document has been made available to the Court.

The original credit card agreements stated that they would be governed by federal law and, where state law applies, Delaware law. Wallgren Decl. Ex 4 at 2, Ex 7, at 2. At some as yet unknown point in time, Kohl's began using an agreement that called for its terms to be governed, where state law was applicable, by Virginia law; the state where Capital One was located. Compl. Ex. 1 at 3. Although Plaintiffs contend the change to Virginia law was made in the statement of up-to-date terms that was to have been sent out pursuant to the 2010 agreement between Kohl's and Capital One, the record contains no evidence of when or whether Capital One sent such a statement to cardholders. The record also lacks evidence regarding when the Virginia choice-of-law provision was inserted into the cardholder agreements or whether that provision ever was applied to Plaintiffs' accounts.

## II.   ANALYSIS

### A.   *Legal Standard for Motion to Compel Arbitration*

To determine whether there is a valid agreement to arbitrate between Plaintiffs and Kohl's, "we must initially decide whether the determination is made under Fed. R. Civ. P. 12(b)(6) or [Fed R. Civ. P.] 56 and thus, what materials we may consider." *Sanford v. Bracewell & Guiliani, LLP*, No. 14-1763, 2015 WL 4035614, at *2 (3d Cir. July 2, 2015). "Motions to

compel arbitration are reviewed under Rule 12(b)(6) '[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint).'" *Id.* (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F.3d 764, 773–74 (3d Cir. 2013) (alteration in original and internal quotation marks omitted)). In such a case, the Court examines "the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322–23 (2007). In addition, the court also "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

As Kohl's rightly states, Mot. at 7, in determining whether a <u>particular issue</u> is within the <u>scope</u> of an arbitration provision, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) (citations and internal quotation marks omitted). The rule for determining whether the parties have agreed to arbitrate their disputes, however, turns on the application of "ordinary state-law principles that govern the formation of contracts." *Id*. "'[A]rbitration is a matter of contract and . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 250 (1977) (quoting *United Steelworkers of America v. Warrior and Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)); *see also Guidotti*, 716 F.3d at 771 (requiring that "a court

shall be 'satisfied that the making of the agreement for arbitration . . . is not in issue' before it orders arbitration") (quoting 9 U.S.C. § 4).  "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944 (alterations in original) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986)).

There are, however, instances where the information available in connection with a Rule 12(b)(6) motion may be insufficient to permit a court to determine whether the parties agreed to an arbitration provision applicable to the dispute in issue.  "If the motion to compel arbitration is not based on a complaint 'with the requisite clarity' to establish arbitrability or 'the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did,' resort to discovery and Rule 56 is proper."  *Sanford*, 2015 WL 4035614 at *2 (citing *Guidotti*, 716 F.3d at 774) (alteration in original and internal quotation marks omitted)).  In that case, '"the non-movant must be given limited discovery on the narrow issue concerning the validity' of the arbitration agreement."  *Guidotti*, 716 F.3d at 774 (quoting *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 511 (7th Cir. 2003)).  After such discovery, the party seeking arbitration may file a renewed motion to compel arbitration, which will be judged by the standards governing summary judgment motions.  *Id.* at 776.

      **B.**    *The Documents that May Be Considered on This Rule 12(b)(6) Motion*

For the purposes of making the determination whether, on a Rule 12(b)(6) standard, Defendant's motion should be granted, the Court will consider the materials eligible to be considered on such a motion:  the allegations of the Amended Complaint, the 2014 exemplar of the Kohl's credit card application currently in use that is attached to the Amended Complaint,

7

Compl. Ex. 1, the exemplars of the credit agreements in use at the times Tantlinger and Underwood applied for their Kohl's cards, which are undisputedly authentic for the purposes of this motion only, Hrg. Tr. at 15, and the October 10, 2010 letter in which Kohl's changed the terms of its agreement to remove the Arbitration Provision. Wallgren Decl. Ex. 10; Pl.'s Supp. Br. at 2-3.

### C. *Kohl's Motion Cannot Be Resolved Under Rule 12(b)(6).*

The crux of the parties' dispute is when the Plaintiffs' claims accrued.[4] Kohl's contends that the Plaintiffs' claims are based on their enrollment in KAE and, therefore, that the claims accrued at the time of their enrollment. Because the Plaintiffs' enrolled in KAE at a time when their credit card agreements contained the Arbitration Provision, Kohl's argues that they are bound by that provision. Under Kohl's view, the October 10, 2010 change in terms letter, which removed the Arbitration Provision from the agreement, did not apply retroactively to claims that had already accrued before the letter was sent. Kohl's relies on cases holding that an arbitration provision in an expired agreement continues to govern claims that arose under the agreement that contained the arbitration provision in the absence of an agreement that renders it inapplicable expressly or by clear implication. Reply at 5-6 (citing *Nolde Bros*, 430 U.S. at 255).

Plaintiffs contend that their claims did not accrue until they incurred charges for KAE by maintaining a month-end balance on their accounts. Plaintiffs assert that they did not purchase or receive the credit protection offered by the KAE until they ran a month-end balance, for which the credit protection was provided and were billed for that protection. Plaintiffs argue that they did not have any claim to assert until they suffered damages by incurring charges for KAE credit protection. Because the October 10, 2010 letter expressly removed the Arbitration Provision

---

[4] Nevertheless, neither party has provided significant legal analysis or authority for their position as to when Plaintiffs' claims accrued.

8

from the parties' agreements, and Plaintiffs only incurred charges at issue in this case after that letter had removed the provision, Plaintiffs contend that their claims are not subject to arbitration.

The most significant obstacle to deciding arbitrability in the context of this Rule 12(b)(6) motion, is that, given the limitations on the material the Court can evaluate on this motion to compel arbitration, it lacks the basis to determine what the applicable contract terms are. Although the credit card applications that Kohl's has presented contain a "summary" of KAE's terms, the actual terms were contained in an Amendment to the Cardholder Agreement that was to be sent to Plaintiffs sometime after they filed their applications. Wallgren Decl. Ex. 4, at 1, Ex. 7 at 1. The amendment stating the complete terms of KAE is not of record. Similarly, the Court cannot know what, if any, further amendments to those terms may have been stated in the letter providing up-to-date terms that was to have been sent in 2011 or whether any such letter was sent.

Moreover, the record also is insufficient to allow the Court to determine which state's contract law to apply to the parties' agreements in order to decide when Plaintiffs' claims accrued. When a contract for the purchase of KAE was formed and when a claim for KAE charges accrued are matters of state contract law.[5] *Comrey v. Discover Fin. Servs.*, 806 F. Supp. 2d 778, 783 (M.D. Pa. 2011); *see First Options¸* 514 U.S. at 944. The original credit card applications specified that Delaware law would govern state law issues. Plaintiffs submitted an exemplar of the credit card application Kohl's currently uses, however, which specifies application of Virginia law. Compl. Ex. 1 ¶ 21. Plaintiffs contended at oral argument that the

---

[5] Plaintiffs have asserted claims for violations of the Virginia Consumer Protection Act of 1977, breach of the covenant of good faith and fair dealing, unjust enrichment, rescission, and declaratory relief. Neither party has addressed whether, and to what extent, the analysis of when the claims accrued depends upon the legal theory of the particular claim.

9

2011 agreement between Kohl's and Capital One executed in connection with Capital One's purchase of Chase's interests in the credit card program required Kohl's to issue a new statement of the terms governing the credit cards, Opp. Ex. A. § 2.4, and that that statement changed the applicable law to Virginia. The record that the Court may consider on a motion to dismiss does not contain that 2011 statement or any other evidence of when the change to the choice of law provision was made. Plaintiffs contend that they need discovery to obtain the documents necessary to resolve that issue. The issue cannot be resolved on this motion to dismiss.

In addition, the documents that can be considered on this Rule 12(b)(6) motion also do not contain detailed information regarding when and under what circumstances Kohl's charged Plaintiffs for KAE. Thus, the Court cannot determine, for example, when the Plaintiffs purchased KAE or during what months Plaintiffs were charged for those services.

 "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Guidotti*, 716 F.3d at 773. The present record lacks the "requisite clarity" to allow the Court to determine on a Rule 12(b)(6) motion whether the parties agreed to arbitrate the claims at issue in this case. *Guidotti*, 716 F.3d at 774. Accordingly, the motion cannot be resolved at this point in the litigation, but must be considered on summary judgment. *Id*. The parties must be granted the opportunity to conduct discovery limited to the issues relevant to establishing whether their claims are subject to arbitration. *Id*. Accordingly, the parties shall have an additional three months in which to conduct discovery relating to the arbitration issue.

At the conclusion of that discovery, Kohl's may renew its motion to compel arbitration. The May 19, 2015 Scheduling Order will be revised accordingly.

An appropriate Order follows.

                                         **BY THE COURT:**

                                         /s/ Wendy Beetlestone
                                         _____
                                         **WENDY BEETLESTONE, J.**

**DATE: 08/10/15**