## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER GORDON, VALERIE TANTLINGER, and JENNIFER UNDERWOOD, on behalf of themselves and all others similarly situated,<br><br><br>Plaintiffs,<br><br><br>-against-<br><br><br>KOHL'S DEPARTMENT STORES, INC. and CAPITAL ONE FINANCIAL CORPORATION,<br><br><br>Defendants. | No.: 2:15-CV-00730 WB |

## SECOND AMENDED COMPLAINT

Plaintiffs, Jennifer Gordon ("Gordon"), Valerie Tantlinger ("Tantlinger") and Jennifer Underwood ("Underwood" and, collectively, "Plaintiffs"), by their attorneys, allege the following against Defendants Kohl's Department Stores, Inc. ("Kohl's") and Capital One Financial Corporation ("Capital One" and, collectively, "Defendants") on behalf of themselves and all others similarly situated, as defined herein, on information and belief based on the investigation of their counsel, except as to the allegations that pertain to the named Plaintiffs and their attorneys, which are alleged on personal knowledge:

## NATURE OF THE ACTION

1.      Prior to April 1, 2011, Kohl's branded credit cards were administered by J.P. Morgan Chase & Co. ("Chase").  Pursuant to a Private Label Credit Card Program Agreement, which became effective on April 1, 2011 (the "Private Label Agreement"), Defendant Capital One purchased all liabilities associated with Kohl's branded credit cards.  A copy of the Private Label Agreement is attached hereto as Exhibit 1.

2.      Subsequent to Capital One's acquisition, all cardholders were to receive a "change in ownership notice" notifying them that Capital One now owned the program.  Exhibit 1 at § 2.4(a).  The notice, importantly, included up-to-date "[d]escriptions of the terms and conditions of the Accounts…."  *Id.*  These new terms and conditions superseded any prior agreements pertaining to Kohl's private label credit cards (*i.e.* cards/agreements previously issued/administered by Chase) and created an entirely new agreement with Kohl's private label credit cardholders.

3.      Thereafter, Capital One began providing Kohl's branded credit cards to <u>both</u> new and existing customers (hereinafter, Kohl's/Capital One Cardholders").  Upon being issued the Kohl's branded credit cards, the Capital One Cardholders, in turn, became parties to the "Kohl's Cardmember Agreement." (the "Cardmember Agreement.")  Thereafter, Defendants imposed fees on Kohl's/Capital One Cardholders for worthless add-on "enhancement products" known as "Kohl's Account Ease" (sometimes referred to as "KAE") and "Privacyguard."  A copy of an exemplar of the Cardmember Agreement is attached hereto as Exhibit 2.

4.      KAE is a purported payment protection plan.  Kohl's/Capital One charged cardholders monthly payments that under limited circumstances (such as involuntary

unemployment, disability or loss of life for qualifying cardholders), Kohl's/Capital One <u>may</u> "cancel" cardholders outstanding Kohl's credit card balance up to $10,000. Defendants impose a $1.60 per $100 charge based on the ending monthly balance for the purported service. However, because many Kohl's/Capital One Cardholders do not qualify for payment protection (*e.g.,* 90-days of unemployment or 7-consecutive days of hospitalization) and the few people who actually know the coverage exists and submit claims they are routinely denied. At bottom, KAE is a virtually -- if not completely -- worthless product designed solely as a vehicle for Defendants to enrich themselves at the expenses of their own customers.

5.       Defendants also impose charges on Kohl's/Capital One Cardholders' accounts for "PrivacyGuard." This product purports to "protect" a consumers' identity through credit monitoring and credit report retrieval services. As with KAE, however, Defendants routinely charge fees for PrivacyGuard when the service is unavailable to consumers who -- often unwittingly -- are required to pay for them.

6.       Defendants impose these charges despite the fact that the Cardmember Agreement mentions <u>nothing</u> about these "enhancement products" nor does the Cardmember Agreement authorize Defendants to collect fees associated with these products.

7.       Importantly, the Cardmember Agreement makes no reference to, nor incorporates, any prior cardmember agreements. Indeed, the Cardmember Agreement shows just the opposite: "This agreement governs your Kohl's credit card account with us [Capital One]...You agree with us [Capital One] that the following terms apply to your Account." Exhibit 2 at 2.

8.       For the foregoing reasons, as particularized below, Defendants have breached the Cardmember Agreement and their implied duty of good faith and fair dealing by taking unfair

advantage of the Cardmember Agreement with Plaintiffs and other Kohl's/Capital One Cardholders who were charged for KAE and PrivacyGuard products they never consented to and further by operating the "enhancement products" program to minimize cost and maximize fess at the expense of consumers. For the sake of clarity, Plaintiffs are not challenging their enrollment in the Kohl's credit card program or any charge on their credit card administered by Chase prior to April 1, 2011. Instead, Plaintiffs are challenging Defendants' charges to the credit cards of Kohl's/Capital One cardholders on and after April 1, 2011 that they never agreed to or authorized.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6) in that: (a) the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs; (b) this is a class action involving 100 or more class members; and (c) at least one class member is a citizen of a State different from at least one Defendant.

10.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a), (b) and/or (c); at least one of the named Plaintiffs resides in this district; many of the acts and transactions giving rise to the violations of law complained of herein occurred in this district; and Defendants conduct substantial business in this district.

## PARTIES

**Plaintiff Jennifer Gordon**

11.      Plaintiff Jennifer Gordon is a citizen of the Commonwealth of Pennsylvania, residing in the Township of Horsham in Montgomery County. In September 2010, Ms. Gordon

opened a Kohl's credit card account at a Pennsylvania Kohl's department store. As of April 1, 2011, Ms. Gordon's account was transferred from Chase to Defendant Capital One and she was issued the Cardmember Agreement and a new credit card plate. As such, Plaintiff Gordon became a Kohl's/Capital One Cardholder and a party to the Cardmember Agreement.

12.      Significantly, Plaintiff Gordon's Cardmember Agreement made no reference to KAE and did not incorporate by reference any prior agreements to which Plaintiff Gordon was a party. Moreover, Plaintiff Gordon never authorized Defendants to charge her for KAE subsequent to the issuance of the Cardmember Agreement.

13.      In October 2013, Plaintiff Gordon discovered additional charges on her Kohl's credit card referred to as "Account Ease Premium." On or about October 4, 2013, Plaintiff Gordon called Kohl's customer service department and requested copies of her prior bills to further investigate and check for additional charges to her account. Plaintiff Gordon received just four billing statements (October 2011-Feb 2012), all of which showed charges for "Account Ease." Defendants have imposed over $400.00 of "Account Ease" charges on Plaintiff Gordon's Kohl's account from April 19, 2011 to date. Defendants have not refunded Ms. Gordon any of the KAE charges from April 19, 2011 to date, and Defendants continue to improperly charge Plaintiff Gordon monthly fees for KAE that she never agreed to or authorized.

**Plaintiff Valerie Tantlinger**

14.      Plaintiff Valerie Tantlinger is a citizen of the Commonwealth of Pennsylvania, residing in the city of Greensburg in Westmoreland County. In March 2007, Plaintiff Tantlinger opened a Kohl's credit card account. Between November 2008 and May 2012, there was no activity and a zero balance on Plaintiff Tantlinger's Kohl's account and during that time her account became inactive.

15.     On May 11, 2012, Plaintiff Tantlinger unsuccessfully attempted to use her Kohl's card at a Kohl's store and was told by the Kohl's representative that her card was inactive and could not be used.  The Kohl's representative asked Plaintiff Tantlinger for identification and other personal information along with her signature.  Plaintiff Tantlinger complied she was issued a Capital One Kohl's credit card plate and the Agreement in the mail soon thereafter.  At that time, Plaintiff Tantlinger became a Kohl's/Capital One Cardholder and a party to the Cardmember Agreement.

16.     Significantly, Plaintiff Tantlinger's Cardmember Agreement made no reference to KAE and did not incorporate by reference any prior agreements to which Plaintiff Tantlinger was a party.  Moreover, Plaintiff Tantlinger never authorized Defendants to charge her for KAE subsequent to the issuance of the Cardmember Agreement.

17.     In June 2013, Plaintiff Tantlinger discovered charges to her Kohl's credit card for "Account Ease."   Defendants' imposition of "Account Ease" charges on Plaintiff Tantlinger's Kohl's account between May 11, 2012 and June 11, 2013 totaled over $200.  To date, Plaintiff Tantlinger has received no refund from Defendants for "Account Ease" charges she never agreed to or authorized.

**Plaintiff Jennifer Underwood**

18.     Plaintiff Jennifer Underwood is a citizen of the State of California, residing in the city of Hanford in Kings County.  In January 2009, Ms. Underwood opened a Kohl's credit card account at a Kohl's department store. As of April 1, 2011, Ms. Underwood's account was transferred from Chase to Defendant Capital One and she was issued the Agreement and a new credit card plate.  As such, Plaintiff Underwood became a Kohl's/Capital One Cardholder and a

party to the Agreement. At that time, and until 2014, Plaintiff Underwood was a resident of the state of Nevada.

19.     Significantly, Plaintiff Underwood's Cardmember Agreement made no reference to PrivacyGuard or KAE and did not incorporate by reference any prior agreements to which Plaintiff Underwood was a party. Moreover, Plaintiff Underwood never authorized Defendants to charge her for PrivacyGuard or KAE subsequent to the issuance of the Cardmember Agreement.

20.     On October 13, 2011, Ms. Underwood paid the account balance on her Kohl's charge in full. Unknown to Ms. Underwood, Defendants were, however, still imposing monthly charges for enhancement products (both "Account Ease Premium(s)" *and* "PrivacyGuard") despite the zero balance on her account. On or about December 29, 2011, Ms. Underwood was surprised to discover that she had a new outstanding balance since she had not made any new charges to her account and she immediately paid the entire new balance of $71.44. Ms. Underwood made no payment to her account between January and April 2012 because she believed, again, she had a zero balance. On or about April 11, 2012, Ms. Underwood received a call from a Kohl's representative, informing her she had an outstanding account balance of over $100, including charges for PrivacyGuard, KAE, and late fees. When Plaintiff Underwood stated that she paid off her account months prior and made no purchases since paying off her card, the Kohl's representative disclosed that the charges were for Privacyguard, KAE, interest, and late fees. Plaintiff Underwood immediately paid her account balance, in full (4/11/2012), closed her Kohl's account to avoid any further charges, and cancelled Privacyguard and "account ease."

21.     Moreover, when Plaintiff Underwood attempted to cancel Privacyguard, the representative told her that her credit score would drop if she cancelled and Plaintiff Underwood disputed that with the representative and told the representative that Privacyguard worthless and she directed the representative to immediately cancel.

22.     However, even after cancelling her Kohl's credit card, KAE and "Privacyguard" on or about April 11, 2012, in or around June 2012, Plaintiff Underwood was shocked to discover that she had been charged repeatedly for "account ease" on April 24, 2012, May 10, 2012 and again on June 6, 2012. Additionally, she had been charged $14.99 for Privacyguard on May 10, 2012 and $14.99 on June 10, 2012.

23.     Defendants' charges for "PrivacyGuard" between April 1, 2011 and June 10, 2012 totaled nearly $225.00 and charges for KAE totaled $32.00. Ms. Underwood has not been refunded any of these payments. In around October 2014, Ms. Underwood ordered her credit report and was shocked to discover a negative report filed by Defendants regarding her credit card account stemming from "Account Ease" and/or PrivacyGuard charges Defendant imposed on her account that she never agreed to or authorized.

**Defendant Kohl's Department Stores, Inc.**

24.     Defendant Kohl's is a Wisconsin corporation with a principal place of business in Menomonee Falls, Wisconsin. Kohl's is the largest American department store chain by number of stores and owns and operates approximately 1,162 stores throughout the U.S. Additionally, Kohl's owns websites, including kohls.com and kohlscorporation.com, where consumers shop, apply for credit cards, and receive and pay their credit card bills. In 2014, Kohl's, had sales of over $19 billion.

**Defendant Capital One Financial Corporation**

25.      Defendant Capital One is a Delaware corporation with a principal place of business in McLean, Virginia.   Capital One is a financial holding company with principal subsidiaries including Capital One National Association. One of the nation's 10 largest banks based on deposits, Capital One has approximately $204 billion in deposits and approximately $300 billion in total assets.   Capital One is the credit card issuer of retail private label accounts for Capital One's relationship with Kohl's.   Credit cards issued by Capital One for Kohl's bear the marks of Kohl's store brand.

## FACTUAL ALLEGATIONS

**Defendants' Private Label Credit Card Joint Venture**

26.      Many retail stores, like Kohl's, issue private-label, or store branded, credit cards to their customers.   These "private label cards" carry higher interest rates and lower credit lines than general purpose credit cards.   Consumers with limited credit options tend to flock to these cards in order to acquire credit for use in the store.[1]

27.      In 2011, Capital One acquired the Kohl's private label credit program from Chase, which consisted of more than 20 million Kohl's customer accounts with an outstanding principal and interest balance of approximately $3.7 billion.   Capital One's Chief Financial Officer Gary Perlin described it as "a $3 billion to $4 billion portfolio."   Other than the Kohl's private label card portfolio, Capital One did not acquire anything else in this transaction from

---

[1] *See* Washington Post, April 10, 2011, "Capital One wins deal to back Kohl's credit cards" (last viewed April 18, 2015:       http://www.washingtonpost.com/business/capitalbusiness/capital-one-wins-deal-to-back-kohls-credit-cards/2011/04/07/AFdmSlFD_story.html).

Chase, *i.e.*, it did <u>not</u> acquire all or substantially all of JP Morgan's assets, stock or other ownership interests.

28.     Kohl's and Capital One's lucrative private-label credit card partnership and revenue sharing agreement included profit-sharing for the sale of ancillary credit card products and fees including the "enhancement products" KAE and PrivacyGuard.  Under the Private Label Agreement, the imposition and collection of fees for ancillary products generates a portion of the $965 million (2013), $885 million (2012) and $607 million (2011) Kohl's received from Capital One.

29.     In connection with Capital One's acquisition of the Kohl's private label account from Chase, Capital One was to send to all cardholders a "change in ownership notice" to notify the cardholders that Capital One now administered the Kohl's private label account.

30.     Significantly, Capital One's notice included up-to-date "descriptions of the terms and conditions of the Accounts..." Moreover, a new agreement (*i.e.,* the Cardmember Agreement) containing new terms and conditions governing the Kohl's private label cards was sent to all cardholders.  These new terms superseded all prior agreements, terms and conditions to which Kohl's private label cardholders were a party.

31.     The JP Morgan Chase Cardmember Agreement contained some disclosure regarding KAE.  For example, the Chase 2010 Cardholder Agreement contained the following disclosure:

**KAE Benefit Summary/Disclosure**
Kohl's Account Ease℠ (KAE) is an optional amendment to your Cardmember Agreement under which we may cancel the balance on your Account up to a maximum of $10,000. The Plan* works when you, your Spouse or Domestic Partner, an Authorized User of your Account, or a Higher Wage Earner in your Household experience a qualifying event: Involuntary Unemployment, Disability, Hospitalization, Loss of Life.

COST OF THE PLAN
The cost is $1.60 per $100 of your ending monthly statement balance and will be conveniently billed to your credit card, each month, unless cancelled. When you do not have a balance there is no charge.

30-DAY MONEY-BACK GUARANTEE
Within two weeks after approval of your credit card application, you will receive an Amendment to the Cardmember Agreement with complete details about the Plan. If you are not completely satisfied, you will have 30 days to cancel and receive a full refund of any Plan fees paid. Of course, you may cancel at any time. To cancel, call 1-800-470-0554. We may cancel the Plan at any time. Please read your Amendment to the Cardmember Agreement carefully. There are eligibility requirements, conditions, and exclusions that could prevent you from receiving benefits under the Plan; a complete explanation can be found in Sections 2-7 of the Amendment. This Plan is not required to obtain credit and your decision whether or not to purchase the Plan is not a factor in the bank's credit decision, nor will it affect the terms of any existing credit agreement with the bank.

*The sum total of Cancellation Benefits applied to your Account under all features of Kohl's Account Ease℠ will not exceed $10,000 in the aggregate. You must have purchased the Plan as of the Qualifying Event Date. Benefits are based on the account balance as of the date of the Qualifying Event, and charges made on or after a Qualifying Event Date are not covered by the Plan. You must continue to pay the Minimum Monthly Payment Due. To qualify for the Involuntary Unemployment benefit, unemployment must continue for 90 days and prior employment is required; Hospitalization must continue for 7 consecutive days; Disability must continue for 90 consecutive days. Please keep a copy of this Summary/Disclosure for your records.

32.      Unlike the Chase agreement, however, and importantly, nothing in the Capital One Cardmember Agreement terms and conditions make any mention of either KAE or PrivacyGuard, nor are any of the prior Chase agreements incorporated by reference.   The Cardmember Agreement, instead, states: "This agreement governs your Kohl's credit card account with us [Capital One]…You agree with us [Capital One] that the following terms apply to your Account."   Exhibit 2 at 2 (emphasis added).   Absent from those explicit terms is any reference to KAE or PrivacyGuard.

33.      Defendants' Capital One and Kohl's Cardmember Agreement made no reference to KAE or Privacyguard and did not authorize Capital One or Kohl's to collect fees for these enhancement products or to unilaterally add these products to the credit card holder's account.

34.      While the Cardmember Agreement makes no mention of KAE or PrivacyGuard, it does grant Defendants access to Plaintiffs' credit accounts and gives them "the right to change the terms…for any reason, and in any respect, by adding, deleting, or modifying any provision, including…fees…and other terms." Exhibit 2 at 2. Defendants improperly exploited this provision, and acted unfairly, by adding fees to Plaintiffs' accounts they were: (1) not authorized to collect and (2) for products which are otherwise worthless.

35.      Approximately three years after acquiring the Kohl's portfolio, Capital One and Kohl's agreed to cease offering "enhancement products" only to new cardholders and existing cardholders whose accounts were not previously subject to the recurring fees. Notwithstanding Defendants' decision to stop, and despite the fact that the Consumer Financial Protection Bureau ("CFPB") and Office of the Comptroller of the Currency ("OCC") had fined   Capital One

$350,000,000[2] for unfair, deceptive and illegal practices in connection with its payment protection and identity protection products in July 2012, and despite Capital One's multi-million dollar settlement for similar practices *Spinelli v. Capital One* (8:08-cv-132) in 2010, Defendants continued billing unsuspecting existing Kohl's/Capital One Cardholders.

## Kohl's "Account Ease"

36.      KAE purports to cancel a consumer's account balance, up to a certain dollar amount, in the event of a qualifying event due to involuntary unemployment, disability, hospitalization or death, provided the accountholder is eligible and continues to make at least the minimum monthly payment due on their account. Defendants charge monthly fees for payment protection of $1.60 per $100 of customers' ending monthly balance.

37.      In reality, though, KAE is principally designed to protect Kohl's and Capital One, not the consumer. KAE is administered by Assurant, Inc. Assurant is, for all intents and purposes, an insurance company. Because of the nature of store-branded credit cards, by sliding KAE on its customer's bill, Defendants are able to insure their own risk in extending credit to someone who may not otherwise qualify. Should the consumer default for one of the stated reasons *(e.g.,* 90-days of unemployment, 7 consecutive days of hospitalization, or death) and if the claim is successfully processed by Assurant, it is Defendants who recover the loss they would have otherwise sustained as a result of non-payment of an unsecured debt.

---

[2] On July 18, 2012, the CFPB ordered Capital one to pay $140,000,000 in restitution to two million consumers and assessed a $25,000,000 penalty and the OCC ordered $150,000,000 in restitution and assessed a $35,000,000 penalty.

38.     Additionally, not only can Kohl's/Capital One Cardholders customers not easily cancel KAE or receive answers to benefits questions, they cannot easily file claims or receive benefits in the rare instances when claims are actually filed.

39.     For those who do file claims, Defendants do not refund KAE premiums even after they have denied claims for KAE benefits nor do they address cardholders continued obligations to pay the monthly fee for Payment Protection after a claim has been denied.

40.     A sampling of the many complaints on the internet reveal Defendants' predatory, routine, practice of adding KAE to a consumer's accounts.   These complaints are nearly identical to the experience of the Plaintiffs:

> **Complaint**: I had my [Kohl's] card for many years before the Account Ease Premium showed up. When I emailed [Kohl's] to ask about it I specifically said "I'm sure you must have some documentation/history of when and how I opted in for this paid service that you can provide me with because it doesn't appear that it was there when I opened my account." Do you know what they did? They ignored my request of proof and simply told me that the charges were removed and I was no longer in the program. They couldn't even tell me when or how I had signed up for it. Then after they removed it, I was signed up for it again (but when? how?). If they can't tell me how/when I supposedly signed up for it then there's a problem and it seems more like a scam than anything else. (May 8, 2011).[3]

> **Complaint**: I just opened my account summary from my Black Friday extravaganza at Kohl's, and noticed this "account ease premium"... I called my mother & sister, and neither one had noticed it on their invoices at first glance. Sure enough though, it's there. (January 7, 2012).[4]

> **Complaint**: First I have noticed this charge as well. This is nothing that I ever opted into, but upon activation of my new MPC card

---

[3] *See* http://melikanokaoi.blogspot.com/2011/05/kohls-account-ease-premium.html (last visited January 6, 2016).
[4] *Id.*

that I received it was supposedly turned on without me opting out, (January 24, 2012).[5]

**Complaint**:   I just now saw this charge on my bill and got PISSED! It took me a second to know for sure this had nothing to do with money going to my balance. The charge is equal to my monthly interest! I bought my boyfriend $700 dollars of new clothes and he's been going to kohls every month to pay at least the minimum $25.  Now I see our bill is going up somehow. Monthly payments of $25 minus monthly charges of $25.95 equals my balance being raised a dollar every month even while making payments! (September 11, 2012).[6]

**Complaint**: I just called to find out what this outrageous fee on my statement was. And, of course got the same runaround   "I apologize and will credit you two months". I asked how long was I being charged this fee and he said as far back he can go is January 2012, and I was being charged then. (November 23, 2012).[7]

**Complaint**: I cancelled this back in 2010. They did the same to me and started charging me again, who knows when. Never thought to check up on them as I haven't used my card since 2011. Finally got irritated that my balance kept increasing and found this on my pdf statement. When I called today, the CS rep didn't sound  surprised at all. (August 17, 2012).[8]

**Complaint**:   Kohls, without my knowledge, has placed an insurance charge on my credit account. I have paid over 1-2 years into this without my prior knowledge or consent. Due to my getting electronic statements I feel Kohls has used this to there advantage to rob people. i am prepared to take action but am trying BBB before I start looking for a lawyer. I have multiple calls and after 2 months of arguing I am now told I have to call Assurant directly because Kohls can not help. This is shady practices and I want my money back so that I may pay my account down. I have been paying over 3 years without making a dent in my account!!!!! SHADY!!!!!! (August 14, 2013).[9]

**Complaint**: Attn: Kohl's Complaint Department/ RE; Account Ease Premium fee that I didn't Authorize.   I have been a faithful Kohl's shopper for a little more than 2 years now….I haven't been

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9]   http://www.bbb.org/wisconsin/business-reviews/department-stores/kohl-s-corporation-in   menomonee-fls-wi-13000007/complaints

receiving my Kohl's statement the last few months and last month I remembering calling in to see why I wasn't receiving my bill. The gentlemen confirmed my address and advised of the current balance due. He said that I had a late fee charged towards my account. I asked why and said that this bill is getting larger and I am not even using the card...Little did I know that Kohl's was charging me a $33.35 Account Ease Premium charge. What is the world is this fee and who signed me up for this because I didn't. I never signed up for this additional under the cover fee; verbally, physically, spiritually or any other kind of way. Kohl's in my opinion is ripping off consumers again and I am certainly getting ripped off.I called Kohl's on Saturday after finally receiving a bill again. I was so angry to see this Account ease Premium on my bill. I asked the representative to see how long I have been charged this amount and she said that she could only go back the last 12 months and guess what: I HAVE BEEN CHARGED THE LAST 12 MONTHS... I would have never agreed to add on such a bogus service like this one. I have never added any additional services on to any of my charge cards. I am requesting that this charged be removed from my account from the first day that it was added because, unless you can show me where I agreed to such a charged in writing or a verbal authorization, I WANT THIS CHARGED REMOVED from the monies that I owe SINCE THE FIRST TIME THAT YOU ALL DECIDED TO ADD IT. As I advised the supervisor when I called, if these charges are not removed, I will contact a attorney because I truly feel that you Kohl's has ripped me off and I am sure other consumers are alos not aware of this charged that Kohl's just placed on my account without my authorization. I am also submitting a claim to the Better Business Bureau because I feel that Kohl's has really committed fraud. Carol B. Spears (November 25, 2012).[10]

**Complaint**: They are sneaky crooks. This fee is added without you knowledge. Even the store doesn't know of this such fee. I love how they say it was agreed upon when I opened the account. But the matter is the fee started showing up three years later.     Why are they so quick to remove the charges if the card holder agreed upon them? its another quick money maker. I lost all respect for kohls!...(December 28, 2012).[11]

**Complaint**: I am trying to refiance my house. I put $300 on my card, and paid it in full, at the store in two weeks. I have paperless statements, so I never knew that they charged me this fee. Turns

---

[10]   *See*   http://complaintreviews.com/kohls-complaint-account-ease-premium-charge-that-i-didnt-authorize   (Last visited January 8, 2016).
[11] *Id.*

out, I went 60 days without paying it, and it showed up on my credit report. This ruined my chances at refinancing at a great rate... and I have (had) excellent credit. I hope I can find a legal way to hold them responsible. If I do, I'll pass it along to everyone here. (January 25, 2013).[12]

**Complaint**: Wow... Just saw a $3.47 charge on my statement and called and found out about this sleazy program that I have been enrolled in since 2011. They don't know how       I was enrolled and I shared that I simply used my ss# at checkout since my card went dormant from non-usage. I was handed the application after my checkout was complete. Their department said they no longer offer this program and that    over 10 months I paid $39+ in fees...yet I rarely carry a balance. (March 30, 2014).[13]

**Complaint**: They tell you they will remove the account ease and then it reappears. I closed my account and I am trying to pay the crap off. Kohls stores are thieves and liars. They "lowered "my bill on the phone and then sent the bill to me with no changes.  I called and they told me the guy made a mistake. They had never even closed my account. I had to "close" it again! Here I am six months later and that damn    account ease reappeared! I am sitting here on hold. Hate that place. (July 1, 2015).[14]

**PrivacyGuard**

41.     Like KAE, after April 1, 2011, Defendants Cardholder Agreement made no mention of PrivacyGuard nor did it authorize Defendants to collect fees for PrivacyGuard.

42.     PrivacyGuard is essentially a worthless product.  To provide credit monitoring and credit report retrieval services, Defendants are required by the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681b, to have a "permissible purpose" to obtain customers' credit information from the credit reporting agencies.  Among other reasons, a credit reporting agency may release a credit report in accordance with a consumer's "written instructions." 15 U.S.C. § 1681b(a)(2).

---

[12] *Id.*
[13] *Id.*
[14] *Id.*

43.     Accordingly, Plaintiff Underwood and other Kohl's/Capital One Cardholders who were enrolled in PrivacyGuard were required to provide sufficient authorization before their credit bureau reports could be accessed.   Until that authorization was obtained, however, Defendants could not provide customers the full credit monitoring or credit report retrieval services of the PrivacyGuard product in which they were enrolled.   Nonetheless, Defendants billed the full monthly fees for PrivacyGuard to Plaintiff Underwood and other Kohl's/Capital One Cardholders who paid for but did not receive the credit monitoring or credit report retrieval benefits of the product.

44.     Moreover, there is a gross disparity between the actual benefits of "PrivacyGuard" and the fees imposed on the consumer's account ($14.99 per month / $179.88 annually).   To the best of her recollection, Plaintiff Underwood never authorized Defendants to charge her for PrivacyGuard and has never received any notices, updates or documentation from PrivacyGuard about her account or any purported credit monitoring.

45.     Further, Defendants continued charging Plaintiff Underwood and other consumers for Privacyguard even after cancellation.   Internet complaints such as these mirror Plaintiff Underwood's:

> **Complaint**: After a $2.95 trial offer (offered through Kohl's), I canceled my (Privacyguard) subscription to their services on 4/29/11 by phone at 9:30am. My Kohl's credit card was charged $14.99 on 5/03/11 even after they assured me it wouldn't be. (July 10, 2011).[15]
>
> **Complaint**: Kohl's credit. They will save you 15% on your purchase if you open a Kohl's credit card. They will then start automatically enroll you in Privacy guard @ $14.99/mo. I paid my

---

[15]     *See*  http://www.ripoffreport.com/r/PrivacyGuard/Nashville-Tennessee-37204/PrivacyGuard-Privacy-Guard-deceptive-practices-absolute-liars-Nashville-Tennessee-751441 (Last visited January 10, 2016).

balance in full, cancelled the acct and have spent 3 months trying to get them to stop adding charges to a "closed" account. Thinking of starting class action suit or just sue them directly for harrassment and fraudulent business practices. Their customer service wiped out all late fees and interest and are trying to get Privacy Guard charges dropped, but only after mentioning "States Attorney & Lawsuit" call em and do the same, they'll take you off outgoing call list. Good Luck !! (December 2015).[16]

## CLASS ACTION ALLEGATIONS

46.        Plaintiffs bring this action on their own behalf and on behalf of the two classes defined below (collectively, unless otherwise indicated, the "Classes.") pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

47.        Class One: All Kohl's/Capital One Cardholders residing in the United States who paid fees or premiums for KAE on or after April 1, 2011 to the present.

48.        Class Two: All Kohl's/Capital One Cardholders residing in the United States who paid fees or premiums for PrivacyGuard on and after April 1, 2011 to the present.

49.        Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest; any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case; the attorneys representing Plaintiffs and Defendants; and all governmental entities.

50.        Numerosity: Fed. R. Civ. P. 23(a)(1). The Classes are comprised of thousands of consumers, the joinder of whom in one action would be impracticable.   The exact number or

---

[16]*See*  http://903.virtualphones.net/9035930589.csv (Last visited January 10, 2016).

identification of the members of the Classes is presently unknown.  The identity and number of the members of the Classes are ascertainable and can be easily determined based on Defendants' records.

51.     Commonality and Predominance: Fed. R. Civ. P. 23(a)(2), 23(b)(3).   Common questions of fact and law that are capable of class-wide resolution exist as to the Classes and predominate over questions affecting only individual members.  The answers to these common questions will advance this litigation significantly.   Common questions capable of generating common answers apt to drive the resolution of the litigation include the following: (a) whether the Agreement imposes on Defendants obligations of good faith and fair dealing; (b) whether Kohl's/Capital One Cardholders were improperly charged for KAE and PrivacyGuard; (c) whether KAE and PrivacyGuard are virtually or entirely worthless products; (d) whether Defendants breached their Agreement with Kohl's/Capital One Cardholders who were charged for KAE and PrivacyGuard; and (e) the appropriate measure of damages recoverable by Kohl's/Capital One Cardholders who were charged for KAE and PrivacyGuard.

52.     Typicality: Fed. R. Civ. P. 23(a)(3). Plaintiffs assert claims that are typical of the members of Class One and Class Two in that Plaintiffs paid for KAE (All Plaintiffs) and PrivacyGuard (Plaintiff Underwood) and are also members of each Class.  Moreover, Plaintiffs assert the same claims and seek the same relief as the other members of Class One, and Plaintiff Underwood asserts the same claims and seeks the same relief as the other members of Class Two.

53.     Adequacy:  Fed.  R.  Civ.  P.  23(a)(4);  23(g)(1).  Plaintiffs  are  adequate representatives of the Classes because they fit within the Classes they purport to represent; their interests do not conflict with the interests of the members of the Classes they seek to represent;

19

and they are represented by experienced counsel who have litigated numerous class actions and intend to prosecute this action vigorously.

54.  Superiority: Fed. R. Civ. P. 23(b)(3). A class action is the best available method for the efficient adjudication of this litigation because: (a) it would be impracticable for each member to prosecute individual litigation due to the size of the claims at issue; (b) individual litigation of thousands of such claims would be unduly burdensome to the courts; (c) the size of individual class members' claims prevents class members from seeking legal redress for the wrongs identified in this Complaint; and (d) individual litigation has the potential to result in inconsistent or contradictory judgments. Without the class action vehicle, the Classes would have no reasonable remedy and would continue to suffer losses as Defendants continue to charge premiums for worthless products in violation of the Agreement.

## COUNT ONE
## BREACH OF CONTRACT
## COVENANT OF GOOD FAITH AND FAIR DEALING

55.  Plaintiffs incorporate and re-allege all preceding paragraphs as if they were set out fully herein.

56.  Plaintiffs and Defendants are parties to the Agreement.

57.  In breach of the Cardmember Agreement, Defendants charged Plaintiffs and other Kohl's/Capital One Cardholders fees for KAE and/or PrivacyGuard which Defendants were not authorized to charge.

58.  Further, in breach of the Agreement, Defendants charged Plaintiffs and other Kohl's/Capital One Cardholders for KAE and/or PrivacyGuard, which have no or little value. As a result, Plaintiffs and the other members of the Classes have been damaged.

59.      A covenant of good faith and fair dealing is implied in every contract.   The concepts of general duties of good faith and fair dealing in the performance of a contract as advanced in the Restatement (Second) of Contracts § 205.   Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing.   Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.

60.      Evading the spirit of the bargain in a contract and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.   Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.   Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.   An example of bad faith is the evasion of the spirit of the bargain.

61.      Defendants have breached the covenant of good faith and fair dealing inherent in the Agreement by charging fees or premiums for products for which they were not authorized to charge and/or otherwise for products that have little, if any, value.   As a result, Plaintiffs and the other members of the Classes have been damaged.

62.      Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Agreement.

## COUNT TWO
## UNJUST ENRICHMENT

63.      Plaintiffs incorporate and re-allege all preceding paragraphs as if they were set out fully herein.

64.     Defendants have received from Plaintiffs and members of the Classes benefits in the form of fees or premiums charged for KAE which Defendants were not authorized to charge.

65.     Defendants have received from Plaintiffs and members of the Classes benefits in the form of fees or premiums charged for KAE and PrivacyGuard, which have little, if any, value.

66.     Both Defendants shared and benefited from these fees and premiums, and, as such, received benefits directly from Plaintiffs and other members of Class One and Class Two.

67.     Defendants had knowledge of these benefits and voluntarily accepted and retained the benefits conferred on them.

68.     Allowing Defendants to retain these benefits will result in their unjust enrichment. Plaintiffs and each Class member are entitled to recovery the amounts by which the Defendants were unjustly enriched.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray:

a.  That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that the Plaintiffs are proper class representatives for the Classes they seek to represent, and their counsel are adequate class counsel;

b.  That judgment be entered against Defendants and in favor of Plaintiffs and the Classes for relief in this Complaint as requested above, and for actual, compensatory, and punitive damages in an amount to be determined at trial;

c.  That judgment be entered imposing interest on damages, litigation costs, and attorneys' fees against Defendants as applicable to the individual counts;

d.  Awarding Plaintiffs any pre-judgment and post-judgment interest as may be allowed under the law; and

e. For all other and further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: January 12, 2016                     Respectfully submitted,


/s/ Patrick Howard
Patrick Howard, Esq. (PA Bar Id. #88572)
**SALTZ MONGELUZZI BARRETT &**
**BENDESKY, P.C.**
One Liberty Place
Philadelphia, Pennsylvania 19103
Tel: (215) 496-8282
Fax: (215) 496-0999
phoward@smbb.com


**/s/ Lee S. Shalov\***
Lee S. Shalov
Wade C. Wilkinson (PA Bar Id. 319821)*
**McLAUGHLIN & STERN LLP**
260 Madison Ave.
New York, New York 10016
Tel: (646) 278-4298
Fax: (212) 448-0066
lshalov@mclaughlinstern.com

 **/s/ Angela M. Edwards\***
Angela M. Edwards, Esq.
**Law Office of Angela Edwards**
72 Canterbury Circle
East Longmeadow, Massachusetts 01028
Tel: (413) 525-3820
Fax: (413) 525-3820
angelaedwards@charter.net


* Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I, Patrick Howard, hereby certify on this 13th day of January, 2016, that a true and correct copy of the Plaintiffs' Second Amended Complaint was served upon defendants via electronic mail at the addresses listed below.

/s/ Patrick Howard
Patrick Howard

Daniel J. McKenna (mckennad@ballardspahr.com)

Joseph A. Schuster (schusterj@ballardspahr.com)

Martin C. Bryce (Bryce@ballardspahr.com)

Sarah Schindler-Williams (schindlerwilliamss@ballardspahr.com)