IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER UNDERWOOD, on Behalf of Herself and All Others Similarly Situated, Plaintiffs, | CIVIL ACTION |
| v. | NO. 15-730 |
| KOHL'S DEPARTMENT STORES, INC. and CAPITAL ONE, NATIONAL ASSOCIATION, Defendants, | |

## MEMORANDUM OPINION

Named Plaintiff Jennifer Underwood seeks to certify a class against Defendants Kohl's Department Stores, Inc. and Capital One, National Association, arguing that the two companies were unjustly enriched at her and the class' expense. Plaintiff contends that Defendants profited from a deficient credit-monitoring product called "PrivacyGuard" that was sold to her and members of the putative class. In particular, when Plaintiff and putative class members did not complete the second step in registering for PrivacyGuard services, they did not receive the full range of promised credit-monitoring services. Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff moves to certify a class of persons who paid for PrivacyGuard's monthly fees but did not complete the second activation step. For the reasons that follow, Plaintiff's proposed class shall be partially certified.

I. BACKGROUND

PrivacyGuard was an identity theft protection and credit-monitoring product available to customers of Kohl's-branded private-label credit card ("Kohl's card"). Kohl's itself did not own or issue the Kohl's cards. Rather, Chase did from April 2006 until mid-2010, when Capital One replaced Chase as issuer. Kohl's solicited its customers to purchase PrivacyGuard through a

third party, Trilegiant, and received a portion of the proceeds of the charges. Capital One processed the PrivacyGuard charges and also received a share of the fees.

Kohl's card customers usually enrolled in PrivacyGuard when they called to activate their cards. Under an interactive voice recognition program, Kohl's card customers who signed up over the phone would receive an initial set of services such as identity theft insurance and access to the PrivacyGuard website. But to acquire a more comprehensive set of services, including access to full credit reports and daily credit-monitoring services, customers had to complete a second step of the activation process. This required providing their social security number to Trilegiant and giving it authorization to access their credit reports. Regardless of whether Kohl's card customers completed the second step, they were charged full price for PrivacyGuard, which cost $2.95 for the first month and $14.99 for each month afterwards.

While 30,000 Kohl's card customers enrolled in PrivacyGuard by mid-2012, only 12% completed both steps of the registration process and obtained its full set of services. In other words, over 26,000 Kohl's card customers completed just the first step and received limited PrivacyGuard services. Plaintiff Jennifer Underwood signed up for a Kohl's card in 2009, enrolling in PrivacyGuard in November 2010 without completing the second step. Plaintiff claims that she called Kohl's several times to cancel PrivacyGuard. Plaintiff, however, continued to be billed until she closed her Kohl's card in June 2012. By the end of October 2013, Defendants stopped billing for PrivacyGuard through Kohl's card accounts.

Plaintiff asserted a claim for unjust enrichment against Defendants, which survived summary judgment. *Gordon v. Kohl's Dep't Stores, Inc.*, 2017 WL 3390269, at *12-13 (E.D. Pa. Aug. 7, 2017). As the prior opinion's choice-of-law analysis explained, Plaintiff's claim was governed by Delaware law because Plaintiff opened her Kohl's card account before April 1,

2011. For those who opened a Kohl's card before April 1, 2011, they generally received a Chase cardmember agreement which provided that Delaware law would apply to any dispute. *Id*. at *8.

The Chase cardmember agreement allowed the issuer or owner of Kohl's cards to modify the agreement in any way upon notice to the card holder. *Id.* at *1. Even though Capital One took over the reins of issuing Kohl's cards by mid-2010, there is no evidence that Kohl's card holders who opened an account before April 1, 2011 were ever systematically notified that Capital One changed the choice-of-law provision of Chase's cardmember agreement. *Id.* at *2. By contrast, customers who opened a Kohl's card after April 1, 2011 received an updated Capital One cardmember agreement with a choice-of-law provision indicating that Virginia law would apply. *Id*.

Plaintiff now seeks to certify a class of Kohl's card holders who paid $14.99 per month for PrivacyGuard from February 13, 2012 to October 31, 2013 and did not complete the second step of the PrivacyGuard enrollment. Plaintiff proposes certifying this as a damages class under Rule 23(b)(3) of the Federal Rules of Civil procedure.

**II.     LEGAL STANDARD**

Class actions are "an exception to the rule that litigation is usually 'conducted by and on behalf of the individual named parties only.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). Thus, the party seeking class-action certification "bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." *Id*.; *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 485 (3d Cir. 2015) (clarifying "preponderance of evidence" standard in class action certifications). A "putative class must satisfy the four requirements of

Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am.*, 687 F.3d 583, 591 (3d Cir. 2012); Fed. R. Civ. P. 23.

A motion for class certification demands a "rigorous analysis" to ensure that the Rule 23 requirements are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011); *Byrd*, 784 F.3d at 163. This "rigorous analysis" may entail evaluating the merits of a plaintiff's underlying claim. *Wal-Mart*, 564 U.S. at 351; *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 370 (3d Cir. 2015). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites are satisfied." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466-67 (2013).

### III. DISCUSSION

#### a. Plaintiff's Class-Wide Unjust Enrichment Claim

As a preliminary matter, the Court's previous summary judgment opinion did not preclude Plaintiff from asserting a class-wide unjust enrichment claim based on class members' failure to complete the second PrivacyGuard activation step. *Gordon*, 2017 WL 3390269, at *12 n.14. Because no contract governed the relationship between Plaintiff and Defendants as to PrivacyGuard, Plaintiff could pursue an unjust enrichment claim. *Id.* (citing *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 891 (Del. Ch. 2009), which holds that an unjust enrichment claim is unavailable if there is a contract between the parties). Plaintiff's proposed class includes those seeking to recover for unjust enrichment under either Delaware or Virginia law. More specifically, for putative class members who opened a Kohl's card account before April 1, 2011, their unjust enrichment claims would be governed by Delaware law pursuant to the choice-of-law provision of their cardmember agreement. *See id.* at *8. And, for those who opened a

4

Kohl's card account after April 1, 2011 and received notice of the changed choice-of-law provision under the Capital One cardmember agreement, their unjust enrichment claims would be governed by Virginia law. *See id*. at *2; *id.* at *8 n.6 ("[T]he Court shall look to the choice of law provisions in the contracts at issue in this case to determine which law applies.").

Although Defendants argue otherwise, the putative class is not limited to members who, like Plaintiff, tried to cancel PrivacyGuard without success. *See id.* at *12 n.14 (declining to decide, at that juncture, whether charging the full price for PrivacyGuard before completing the second step could support an unjust enrichment claim). Rather, the putative class is broader, consisting of those who did not complete the second step of activation but still paid the PrivacyGuard fees. Plaintiff's class-wide unjust enrichment claim, as proposed, will now be evaluated under the strictures of Rule 23.

### b. Rule 23(a) Pre-requisites[1]

#### i. Numerosity

The numerosity pre-requisite provides that class certification is permissible only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," if the potential number of plaintiffs is more than 40, "the first prong of Rule 23(a) has been met." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). Plaintiff has satisfied the numerosity requirement. More than 26,000 Kohl's card holders did not complete the second step of activation. Thus, a

---

[1] Although commonality is a pre-requisite under Rule 23(a), it shall be discussed later in the context of Rule 23(b)(3)'s predominance requirement. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009) ("[W]e consider the Rule 23(a) commonality requirement to be incorporated into the more stringent Rule 23(b)(3) predominance requirement, and therefore deem it appropriate to analyze the two factors together, with particular focus on the predominance requirement.") (internal quotation marks omitted).

5

proposed class subject to Delaware law or a proposed class subject to Virginia law will likely exceed the threshold of 40.

### ii. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality inquiry involves a comparison of "the attributes of the plaintiff" and "the class as a whole" to see if they are sufficiently similar. *See Marcus*, 687 F.3d at 598. Such a comparison addresses:

> three distinct, though related, concerns: (1) the claims of the class representative must generally be the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Id*. (quoting *In re Schering Plough Corp. ERISA Lit.*, 589 F.3d 585, 602 (3d Cir. 2009)). Plaintiff satisfies each typicality sub-element.

First, Plaintiff advances one legal claim with a common fact underpinning it: whether Defendants should be liable on a theory of unjust enrichment based on their failure to provide the full set of PrivacyGuard services when class members did not complete the second step of activation. Plaintiff's unjust enrichment claim under Delaware law is similar to such a claim under Virginia law. *Compare Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (holding that unjust enrichment claim requires five elements: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law") *with Whitehurst v. Cho*, 1992 WL 884510, at *1 (Feb. 19, 1992) (holding that an unjust enrichment claim requires three elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the

6

conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value."). At bottom, both types of unjust enrichment claims ask whether it would be inequitable for Defendants to retain a benefit based on money that the Plaintiff and class members paid for PrivacyGuard fees. *See Nemec*, 991 A.2d at 1130 (defining unjust enrichment as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience"); *Whitehurst*, 1992 WL 884510, at *1 (observing that "[t]he equitable doctrine of unjust enrichment rests upon the idea that a man shall not be allowed to enrich himself unjustly at the expense of another.").

Second, Plaintiff is subject to only one defense, the voluntary payment doctrine, which Defendants plan to assert against Plaintiff and her proposed class. Third, Plaintiff's interest is aligned with that of the class because, like the proposed class, she seeks restitution for Defendants' allegedly unfair retention of money. Thus, Plaintiff has met the typicality requirement.

### iii. Adequacy

The adequacy requirement ensures that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry has two components, testing whether plaintiff's counsel is qualified to represent the class and uncovering "conflicts of interest between named parties and the class they seek to represent." *Schering Plough*, 589 F.3d at 602. Plaintiff's counsel has experience in litigating class actions. Further, there is no conflict of interest between Plaintiff and her proposed class. As noted above in the typicality analysis, Plaintiff presses one unjust enrichment claim that is typical of the class,

and the claim does not invite a defense unique to her. *See id*. (noting that there are "clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and [the] second part of the adequacy inquiry that focuses on possible conflicts of interest."). Defendants also do not challenge Plaintiff's ability to adequately represent the class. Plaintiff has therefore satisfied the adequacy requirement.

### c. Rule 23(b)(3) Requirements

A Rule 23(b)(3) class requires that "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Rule 23(b)(3) imposes three separate requirements: ascertainability, superiority, and predominance.

#### i. Ascertainability

Initially, "[a] plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd*, 784 F.3d at 163. Ascertainability is an implied requirement of Rule 23(b)(3) certification, and a plaintiff must show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id*. (internal quotation marks omitted). Plaintiff proposes a sufficiently definite class that relies on objective criteria. The proposed class is limited to Kohl's card holders who (1) paid for PrivacyGuard between February 13, 2012 and October 31, 2013 and (2) did not complete the second step. At oral argument, Defendants acknowledged that their computer records could be used to identify such putative class members. It is also probable that these records can distinguish among class members who are subject to Delaware law or Virginia

8

law. All that would be needed is the date a class member opened her Kohl's card account, since Delaware law applies to those who opened an account before April 1, 2011 and Virginia law applies to those who opened an account on any date afterwards. The ascertainability requirement is therefore met.

### ii. Superiority

The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004) (internal quotation marks omitted). Whether the class-action device is "superior" to other methods of adjudication involves considering a "nonexhaustive list of factors" enumerated in Rule 23(b)(3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997). These factors include "[t]he class members' interests in individually controlling the prosecution or defense of separate actions" and "the likely difficulties in managing a class action."[2] Fed. R. Civ. P. 23(b)(3)(A), (D).

The factors here weigh in favor of finding that the class-action device is superior. For the first factor, the putative class members do not have an individual interest in prosecuting their unjust enrichment claims because the sum of money in controversy for each individual is relatively low. *See Amchem Products*, 521 U.S. at 617; *Warfarin Sodium*, 391 F.3d at 534 (concluding that the class action was superior because, among other things, "each consumer [had] a very small claim in relation to the cost of prosecuting a lawsuit."). For the other factor, the class-action device does not pose significant difficulties since Plaintiff has only one remaining claim for unjust enrichment still extant. Thus, Plaintiff has satisfied the superiority requirement.

---

[2] Other factors include "the extent and nature of any litigation concerning the controversy already begun by or against class members" and "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(B), (C). Neither party has discussed these factors.

### iii. Commonality and Predominance

Rule 23(b)(3) requires that common questions of law or fact "predominate" over questions affecting individual class members. Fed. R. Civ. P. 23(b)(3). The predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). To that end, the analysis entails (a) first examining each element of the plaintiff's legal claim to see if it involves common issues of law or fact and then (b) determining whether issues common to the class overwhelm issues subject to individualized proof. *See Neale*, 794 F.3d at 370-71; *see also* 2 NEWBERG ON CLASS ACTIONS § 4:50 (5th ed.) ("[T]he predominance analysis logically entails two steps – the characterization step and the weighing step. A court must first *characterize* the issues in the case as common or individual and then *weigh* which predominate."). The first step is essentially the commonality analysis under Rule 23(a)(2). *See Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) ("The commonality requirement is subsumed by the predominance requirement.") However, the predominance requirement of Rule 23(b)(3) "is even more demanding" than the commonality pre-requisite since the Court must "ensure that issues common to the class predominate over those affecting only individual class members." *Behrend*, 569 U.S. at 34; *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).

As to commonality, Plaintiff can articulate a common legal claim based on unjust enrichment on behalf of the class. Plaintiff has therefore satisfied the Rule 23(a)(2) commonality pre-requisite by presenting the following question that is common to the class: Was it inequitable under Delaware or Virginia law for Defendants to have profited from PrivacyGuard payments when the class did not receive the full range of services? *See Reyes*, 802 F.3d at 486 (noting that "even a single common question" suffices for the commonality pre-requisite). The

question can be answered in one stroke through "generalized, class-wide proof" because Defendants' conduct toward the proposed class was uniform in that none of the putative class members received the promised PrivacyGuard services. *See Tyson Foods*, 136 S. Ct. at 1045 (internal quotation marks omitted). The same evidence will apply for each class member's claim and will raise the same legal issue as to that claim – whether a benefit was unjustly retained to the loss of another or whether money was retained "against the fundamental principles of justice or equity and good conscience." *Vichi v. Koninklijke Philips Elec. N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012); *Whitehurst*, 1992 WL 884510, at *1.

### 1. Delaware Unjust Enrichment Claim

As to predominance, Plaintiff has shown, by a preponderance of the evidence, that the common question of Defendants' liability under Delaware law overwhelms individual questions affecting class members. *See* Fed. R. Civ. P. 23(b)(3). Defendants' retention of money from PrivacyGuard payments (when the class did not receive the promised set of services) will be relevant to the essential elements of Plaintiff's unjust enrichment claim. *See Hayes*, 725 F.3d at 359 ("[T]he predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence."). The circumstances surrounding Defendants' retention of money will help determine (1) whether Defendants were "enriched" when they received money from PrivacyGuard fees; (2) whether Plaintiff and the class were "impoverished" in paying such fees; (3) whether the enrichment and impoverishment were related; (4) whether Defendants can furnish a "justification" for the receipt of these fees; and (5) whether Plaintiff and the class have an adequate remedy at law. *See Nemec*, 991 A.2d at 1130. An adequate remedy at law is one that "afford[s] the plaintiff full, fair

11

and complete relief." *El Paso. Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36, 39 (Del. 1995).

Defendants nevertheless argue that a Rule 23(b)(3) class is inappropriate here because two types of individual questions defeat predominance: (1) how much each class member subjectively valued her incomplete receipt of PrivacyGuard services and (2) whether, under Defendants' planned use of the voluntary payment defense, each class member personally knew that failure to complete the second step would limit the range of PrivacyGuard services. Neither issue precludes certification.

First, because the law of unjust enrichment is generally benefits-based and focuses on what Defendants gained, the subjective value a class member may attach to PrivacyGuard services is immaterial at the liability stage. *See Nemec*, 991 A.2d at 1130 (defining unjust enrichment). That is, an unjust enrichment cause of action analyzes the benefit that the class members themselves conferred upon Defendants for an incomplete set of PrivacyGuard services. *See id.* The principal issue is therefore the possible inequity of Defendants retaining that benefit and not the personal value that class members assigned to those PrivacyGuard services. *See id.*; *see also* 1 Dan B. Dobbs, LAW OF REMEDIES § 1.1 at 5 (2d ed. 1993) ("[R]estitution is measured by the defendant's gains, not by the plaintiff's losses."). Thus, no individualized inquiries as to the class' subjective valuation of PrivacyGuard would be needed in deciding Defendants' liability in unjust enrichment.[3]

Second, asserting the voluntary payment defense, which raises individualized questions, does not prevent Rule 23(b)(3) certification. *See In re Linerboard Antitrust Litig.*, 305 F.3d 145,

---

[3] Furthermore, a Rule 23(b)(3) class does not require finding that damages are capable of being measured on a class-wide basis. *Neale*, 794 F.3d at 374. The proposition that "individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal." *Id.* (quoting *Comcast*, 133 S. Ct. at 1437 (Ginsburg, J. & Breyer, J., dissenting)).

161-163 (3d Cir. 2002) (rejecting a per se bar on Rule 23(b)(3) certification when affirmative defenses turn on facts specific to each class member's case); 2 NEWBERG ON CLASS ACTIONS § 4:55 (observing that "a class that otherwise satisfies predominance can be certified even if affirmative defenses raise individual questions of law or fact."). The voluntary payment defense precludes recovery if payment was made "with full knowledge of the facts." *Nieves v. All Star Title, Inc.*, 2010 WL 2977966, at *6 (Del. Super. Ct. July 27, 2010); *W. Nat. Gas Co. v. Cities Svc. Gas Co.*, 201 A.2d 164, 169 (Del. 1964) ("Of course, payment voluntarily made with full knowledge of the facts cannot be recovered, in the absence of a contract to repay."). Defendants intend to assert the defense against each putative class member, arguing that some members may have been aware that failure to complete the second step limited the range of PrivacyGuard services. According to Defendants, because the voluntary payment defense necessarily implicates a person-by-person inquiry into what the individual knew about PrivacyGuard services after completing just the first step, the class-action device would be improper here.

However, the common question of Defendants' liability under Delaware law still predominates because Plaintiff has shown that Defendants lack evidence for their voluntary payment defense. Indeed, Plaintiff claims that she has not, to date, received any evidence regarding a putative class member who voluntarily paid the fees and knew that she would not receive the full range of PrivacyGuard services. Defendants do not contend otherwise, and the parties completed all fact discovery pursuant to stipulation months ago. ECF No. 113 at 2. At this point, then, Plaintiff has shown a class-wide absence of evidence in support of Defendants' voluntary payment defense. *See Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (holding that plaintiffs satisfied predominance requirement, despite defense of consent, because they "presented evidence suggesting a class-wide absence of consent."); *Waste*

13

*Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298-99 (1st Cir. 2000) (affirming Rule 23(b)(3) certification because the "record before the district court did not in any way support the possibility" of affirmative defense of waiver). Plaintiff has, in other words, established that it is more likely than not that the common issue of Defendants' liability under Delaware's law of unjust enrichment will predominate over individualized assessments about putative class members' knowledge.[4] *See Reyes*, 802 F.3d at 485 (explaining that preponderance standard for class certifications is "more likely than not"). Plaintiff has accordingly satisfied the Rule 23(b)(3) predominance requirement as to putative class members who will proceed under Delaware law.

### 2. Virginia Unjust Enrichment Claim

By contrast, Plaintiff has not shown that the common question of Defendants' liability under Virginia law predominates over individual questions affecting class members. *See* Fed. R. Civ. P. 23(b)(3).

As with the Delaware unjust-enrichment analysis, Defendants' retention of money (despite the Virginia class' incomplete receipt of PrivacyGuard services) will be relevant to the elements of a Virginia unjust enrichment claim. Specifically, the Virginia class' payment for PrivacyGuard services not received will be material to determining (1) whether the Virginia class conferred a benefit in the form of money upon Defendants; (2) whether Defendants knew that they were receiving benefits despite their failure to provide the full range of PrivacyGuard

---

[4] This does not preclude Defendants from eliciting testimony that class members were aware that they would not receive the full range of PrivacyGuard services after only completing the first step of activation. *See W. Elec. Co., Inc. v. Stern*, 544 F.2d 1196, 1199 (3d Cir. 1976) (holding, in context of Title VII class-action suit, that "defendants must be allowed to present any relevant rebuttal evidence they choose, including that there was no discrimination against one or more members of the class.").

services; and (3) whether the retention of Plaintiffs' money was inequitable. *See Whitehurst*, 1992 WL 884510, at *1.

Although briefed by neither party, individual issues arising under the voluntary payment rule render a Rule 23(b)(3) class improper for those asserting claims under Virginia law. In contrast to Delaware's voluntary payment rule, Virginia's presumes that any payment made is voluntary "until the contrary is made to appear."[5] *D.R. Horton, Inc. v. Bd. of Supervisors for Cty. of Warren*, 285 Va. 467 (2013) (quoting *Town of Phoebus v. Manhattan Social Club*, 105 Va. 133 (1906)). The proposed Virginia class members, then, bear the burden of showing that their payment "was not voluntary." *Id*. (internal quotation marks omitted). Accordingly, Plaintiff, as opposed to Defendants, must demonstrate that they – the Virginia class members – did not know that failure to complete the second step would limit their PrivacyGuard services. This distinct burden imposed by Virginia law defeats predominance. Particularized questions about the Virginia class members' subjective knowledge – questions that the class members themselves must affirmatively and individually answer – will likely overwhelm the otherwise common question of Defendants' liability. Plaintiff has therefore not satisfied the predominance requirement under Rule 23(b)(3) for the proposed Virginia class.

In sum, Plaintiff's proposed class shall be certified as to class members who are subject to Delaware law. However, Plaintiff's request to certify a class whose members are subject to Virginia law shall be denied. An appropriate order follows.

**November 13, 2017**             **BY THE COURT:**

                                                  **/s/Wendy Beetlestone, J.**

                                                  **WENDY BEETLESTONE, J.**

---

[5] Delaware's voluntary payment rule does not explicitly impose such a burden on an unjust enrichment claimant, *see Nieves*, 2010 WL 2977966, at *6, and the parties have not cited to any case law that suggests otherwise.