# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER UNDERWOOD, on Behalf of Herself and All Others Similarly Situated,<br>　　　　Plaintiffs,<br><br>v.<br><br>KOHL'S DEPARTMENT STORES, INC. and CAPITAL ONE, NATIONAL ASSOCIATION,<br>　　　　Defendants. | NO. 15-730 |

**PLAINTIFF JENNIFER UNDERWOOD'S MOTION FOR FINAL APPROVAL**
**OF CLASS SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Jennifer Underwood, ("Plaintiff" or "Class Representative"), on behalf of herself and the Certified Class, respectfully moves the Court for an Order Granting Final Approval of the Class Action Settlement.

## I.     INTRODUCTION

Plaintiff, Jennifer Underwood, individually and on behalf of the certified Class ("Plaintiff"), submits this memorandum of law in support of Plaintiff's Motion for Final Approval of a proposed partial class settlement with Defendants, Capital One, N.A. and Kohl's Department Stores, Inc. regarding the product PrivacyGuard, only.  The Court granted Preliminary Approval on March 27, 2019, and each of the requirements set forth in that Order have now been satisfied. *See* ECF No. 278.  After dissemination of the Court approved Notice, *no* Class Member objected to any terms of the settlement; *only* 9 out of 16,249 Class Members elected to be excluded.  As such, the Class Members overwhelmingly approve of the settlement terms.  Plaintiff and the Class, therefore, request final approval of the Settlement Agreement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND
### A. Facts

On February 13, 2015, Plaintiffs filed their Class Action Complaint against Capital One and Kohl's.  ECF No. 1.  PrivacyGuard was a purported identity theft protection program. Kohl's private label credit card holders were prompted to enroll in PrivacyGuard when they called to activate their Kohl's credit cards.  Under an interactive voice recognition program, Kohl's card customers who signed up over the phone would receive an initial set of services. But to acquire the advertised benefits (i.e., credit monitoring) customers had to complete a second step of the activation process.  This required providing their social security number to the third-party administrator, Trilegiant and giving Trilegiant authorization to access their credit reports. Regardless of whether Kohl's card customers completed the second step, they were

charged full price for PrivacyGuard, which cost $2.95 for the first month and $14.99 for each month afterwards.  Only 12% of those who enrolled completed both steps of the registration process and obtained its full set of services.  Plaintiff Jennifer Underwood signed up for a Kohl's card in 2009, enrolling in PrivacyGuard in November 2010 without completing the second step.

By the end of October 2013, Defendants stopped billing their customers for PrivacyGuard.  The lone remaining claim in the litigation at the time of settlement was for unjust enrichment against Defendants, which, as set forth below, survived summary judgment.  *See Gordon v. Kohl's Dep't Stores, Inc.*, 2017 WL 3390269, at *12-13 (E.D. Pa. Aug. 7, 2017).

### B. Procedural History

This case has been hard-fought by experienced counsel on both sides for over four years.  After the filing of the original Complaint on February 13, 2015 (ECF No. 1), Kohl's filed a Motion to Compel Individual Arbitration (ECF No. 27) on May 19, 2015, which was argued to the Court on July 14, 2015 and denied on August 10, 2015.  ECF No. 44.  On June 19, 2015, Plaintiffs filed their First Amended Complaint.  ECF No. 35.  On July 20, 2015, Defendants filed a Motion to Dismiss, which was denied as moot on December 22, 2015 following oral argument on December 10, 2015.  ECF No. 58.  On January 13, 2016, Plaintiffs filed their Second Amended Complaint ("SAC").  ECF No. 61.  Defendants moved to dismiss the SAC on February 2, 2016 (ECF No. 67), which, after hearing oral argument on March 2, 2016 (ECF No. 78), the Court granted in part and denied in part on March 28, 2016.  ECF No. 86.  Defendants answered the SAC on April 27, 2016 (ECF Nos. 91-92) and the discovery phase ensued.

The discovery in this case was substantial.  The parties propounded and responded to written discovery requests and produced over 100,000 pages of documents.  Plaintiffs noticed several depositions of individuals and Rule 30(b)(6) depositions of the defendant corporations, and Defendants took the depositions of Plaintiff Underwood – who lived in California at the

time, as well as the other plaintiffs who were part of the case prior to this Court's ruling on summary judgment. In addition, the parties sought judicial intervention to resolve several discovery disputes. *See* ECF Nos. 98, 99, 101, 102.

Both sides filed *Daubert* motions to exclude the other's experts. Following oral argument on April 24, 2017, the Court denied Plaintiffs' motion on May 10, 2017 without prejudice and granted Defendants' motion in part. ECF No. 166.

Following the *Daubert* challenges, Defendants filed their Motion for Summary Judgment and three volume Joint Appendix on April 21, 2017. ECF Nos. 163-64. On August 7, 2017, following oral argument on July 27, 2017, the Court granted summary judgment to Defendants leaving only Plaintiff Underwood's lone claim for unjust enrichment under Delaware law for PrivacyGuard. ECF No. 178 at 21, 24-26. As to the sole remaining claim involving PrivacyGuard, the Court determined that "[w]hile unjust enrichment claims arising from fees incurred prior to February 13, 2012 have already been dismissed as time barred, the evidence regarding Underwood's attempted cancellation of PrivacyGuard in 2011 would allow a factfinder to reasonably conclude that the collection of PrivacyGuard fees that attempted cancellation on May 17, 2011 was not justified." *Id.* at 24-25.

On September 6, 2017, Plaintiffs filed their Motion for Class Certification. ECF No. 189. Following full briefing on class certification, this Court held oral argument on the class certification motion on October 27, 2017. ECF No. 202. On November 13, 2017, this Court certified the following class:

> All persons with a Kohl's Private Label Credit Card who (a) paid $14.99 a month for PrivacyGuard between February 13, 2012 to October 31, 2013; (b) did not complete the second step of PrivacyGuard enrollment; and (c) opened a Kohl's Private Label Credit Card account before April 1, 2011. Excluded from the class is anyone who received a complete refund of her PrivacyGuard

3

> fees levied between February 13, 2012 to October 31, 2013, as well as any employees of either Defendant or Trilegiant.

ECF No. 204.

On November 27, 2017, Defendants filed a Motion for Reconsideration of the Court's Order on class certification. ECF No. 206. Also on November 27, the Court "So Ordered" a stipulation that the parties submit a proposed notice and plan to notify class members of the pendency of the action within 14 days of the Court's decision on Defendants' motion for reconsideration. ECF No. 205. On February 22, 2018, after full briefing on the Motion for Reconsideration, the Court denied Defendants' Motion. ECF No. 213. On March 8, 2018, Defendants filed a Rule 23(f) Petition in the U.S. Court of Appeals for the Third Circuit, as well as to stay all proceedings pending the outcome of the Petition. ECF No. 215. On April 5, 2018, the Court denied that Defendants' Motion to Stay all Proceedings. ECF No. 222. The Third Circuit denied leave to appeal class certification on May 1, 2018. ECF No. 226.

During the pendency of the Rule 23(f) Petition, on April 12, 2018, the Court granted Plaintiff's Motion for Approval of the Form and Manner of Class Notice (ECF No. 214) and "directed [Plaintiff] to use the Class Notice attached to this Order" and "finds that this Class Notice complies with the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure." ECF No. 223. The Court also approved of the method of the dissemination of class notice via first class mail, electronic mail where available, and the settlement website. *Id.* at 1, ¶¶b-d.

On May 18, 2018, the parties stipulated to a mediation session with the Hon. Stephen Orlofsky on June 6, 2018. ECF No. 227. This mediation session, however, did not result in a settlement.

4

On July 2, 2018, this Court entered its Pretrial Scheduling Order (ECF No. 233), and thereafter, the parties prepared for trial that was scheduled to commence on February 19, 2019. ECF No. 238.  The parties filed numerous pretrial motions, including Defendants' Motion to Strike Jury Demand (ECF No. 240) that was denied (ECF No. 252); Defendants' Motion to Strike Prayer for Punitive Damages that was denied without prejudice (ECF No. 260); Plaintiff's Motion to Strike Defendant's Trial Exhibit 58 Pursuant to Fed. R. Civ. P. 37 (ECF No. 250) that was granted (ECF No. 268); as well as numerous motions in limine by both sides requiring supplemental briefing as well as oral argument in Chambers and telephonically.  The parties complied with this Court's Pretrial Scheduling Order, including the filing of pretrial memoranda, additional trial briefing, the exchange of joint exhibits and deposition designations, among other pretrial items as directed by the Court.  The parties attended a Final Pretrial Conference on February 15, 2019, and also participated in a telephonic conference on the President's Day holiday on February 18, 2019 – the day before trial.

Literally, on the eve of trial, on February 18, 2019, following an arm's length series of settlement talks, the parties reached a settlement of the case.  The parties notified the Court that evening of February 18 and advised the Court during a teleconference the morning of February 19th regarding the settlement in principle. On February 22, 2019, the Court scheduled a hearing on April 19, 2019 to address preliminary approval.

Prior to that date, on March 27, 2019, the Court granted Preliminary Approval.  As part of that Order, the Court appointed Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Notice and Claims Administrator and set forth the procedure for dissemination of Class Notice. ECF No. 278, ¶2. The Court also set a Final Approval Hearing for July 22, 2019, 2:00 P.M. *Id.*, ¶8 (iv.).

5

### III.     THE PROPOSED SETTLEMENT

The Settlement Agreement is attached thereto and incorporated herein as Exhibit A, and represents the entirety of the agreement between the parties.  The material terms of the agreement are summarized below:

#### A.  Settlement Amount

Defendants have agreed to pay $1.8 million ("Settlement Fund") to Plaintiff and the Class as set forth in the Settlement Agreement, which represents over fifty-four (54%) percent of the total amount ($3,321.529.30) that Defendants charged for PrivacyGuard.

#### B.  Notice and Release

On April 8, 2019, Epiq mailed the Notice via first class U.S. Mail to 16,587 Class Members. *See* Exhibit B, ¶6 (June 7, 2019, Notice and Opt-Out Declaration of Kevin Skenandore). On that same day, Epiq also sent 9,583 Email Notices to Class Members with a valid email address. *Id*., ¶7. As of May 10, 2019, a total of 777 Notices had been re-mailed, which represents all unique records where Epiq was able to obtain a more current address after address research or where a notice was re-mailed by request. *Id*., ¶8. A total of 16,249 Notices were delivered and *only* 338 Notices remained undeliverable, where Epiq was unable to obtain a more current address. *Id*.  Epiq also launched a recorded phone line ("IVR") on April 9, 2019. As of May 10, 2019, 93 total calls had been received, totaling 305 minutes. *Id*., ¶9.  Finally, Epiq launched a settlement website (www.kohlsprivacyguardclassaction.com) on April 8, 2019. *Id*., ¶10. As of May 10, 2019, the website was viewed on 137 unique occasions, generating a total of 278 page views. *Id*.

On and after the Effective Date of the Settlement Agreement, all of the Class Members will be deemed to have fully, finally and forever released any future claims regarding any claims

arising out of or relating to their enrollment and payment for PrivacyGuard, and the action shall be dismissed with prejudice.

### IV. ARGUMENT IN FAVOR OF FINAL APPROVAL

#### A. The Settlement Should be Approved by the Court as it is Fair, Reasonable, and Adequate

Rule 23 of the Federal Rules of Civil Procedure provides that a proposed class action settlement should be approved where the settlement is "fair, reasonable and adequate."[1] The Third Circuit has established a ten-factor test for determining whether a proposed settlement is "fair, adequate and reasonable."[2] These factors are:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery;

(9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation;[3] and

(10) the degree of direct benefit provided to the Class.[4]

---

[1] Fed. R. Civ. P. 23(e)(2). *See In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998).

[2] *Girsh v. Jepsen*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013).

[3] *In re Cendant Corp. Litig.*, 264 F3d., 201, 232 (3d Cir. 2001) (citing *Girsch*, 521 F.2d at 157).

[4] *In re Baby Prods.*, 708 F.3d at 174.

As discussed below, when examined in light of the ten factors or any standard for that matter, the proposed settlement is fair, reasonable and adequate. It should therefore be approved by the Court.

### 1. The complexity, expense and likely duration of the litigation

The first *Girsh* factor to be considered is the amount of recovery obtained through settlement compared to the complexity, expense, and likely duration of the litigation. "This factor captures 'the probable cost, in both time and money, of continued litigation.'"[5] In this case, the first *Girsh* factor weighs heavily in favor of final approval of the settlement.

The $1.8 million represents more than a 50% recovery of the monies Defendants billed for PrivacyGuard. The settlement was not reached until hours before the parties were prepared to pick a jury and commence trial. By accepting the settlement, the Class is guaranteed a recovery without the risk of trial and/or subsequent appeals. The litigants in this case are experienced in complex matters and believe accepting the settlement in light of the duration and expense with continued litigation is in the class' best interest.

### 2. The reaction of the class to the settlement

There were *no* objections filed to the settlement and *only* 9 requests for exclusion. The factor weighs in favor of approval given the class' overwhelming positive reaction to the settlement.

### 3. The stage of the proceedings and the amount of discovery completed

The third *Girsh* factor to be considered is the stage of the proceeding and the amount of discovery completed. This captures the degree of case development that Class Counsel has

---

[5] *Cendant*, 264 F.3d at 233 (quoting *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995)).

accomplished prior to settlement. Through this lens, the Court may determine whether counsel had an adequate appreciation of the merits of the case before negotiating.[6]

As the Court is aware, this case was litigated for four years and a settlement was reached on the eve of trial, after the parties had the full benefit of the Court's rulings on nearly every outstanding issue. The sole thing left was for a jury to consider the evidence and render a verdict. The parties had a full appreciation of the respective strengths and weakness of the merits. This factor weighs in favor of approval.

### 4. The risks of establishing liability and damages (Factors 4 & 5)

The fourth and fifth *Girsh* factors "attempt[] to measure the expected value of litigating the action rather than settling [] it at the current time."[7] The Court need not delve into the intricacies of the merits of each side's arguments, but rather may "give credence to the estimation of the probability of success proffered by Lead Plaintiffs' Counsel, who is experienced with the underlying case and the possible defenses which may be raised to their causes of action."[8]

Class Counsel saw few risks to establishing liability for the Class. However, there was significant concern that the jury would only award the monies Defendants retained, without awarding them the money the third-party administrator, Trilegiant, obtained. Such a finding would have substantially impacted the damages. The settlement eliminated that possible negative outcome. Accordingly, this factor weighs heavily in favor of approval to ensure a recover for Settlement Class Members.

---

[6] *General Motors*, 55 F.3d at 813.

[7] *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 343 (E.D. Pa. 2007) (citing *Cendant*, 264. F.3d at 238).

[8] *Terry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D.Pa. 2005).

### 5. The risks of maintaining the class action through trial

Class Counsel did not see any significant hurdles to maintaining the certified class through trial, despite the risk that the Court could have granted Defendants' Motion to Decertify the Class filed on the eve of trial. ECF No. 267. And even though this Motion was denied, Defendants likely would have challenged class certification in connection with any appeal. This being said, there is no reason to believe that the likelihood of maintaining class status through trial should cut against settlement.[9] Accordingly, this factor is neutral.

### 6. The ability of the Defendants to withstand a greater judgment

Similarly, both the Defendants were capable of withstanding any potential verdict in this case. Accordingly, this factor is neutral.

### 7. The reasonableness of the settlement in light of the best possible recovery and all attendant risks of litigation, combined with the direct benefit from the settlement to the Settlement Class (Factors 8-10)

As courts have explained, "while the Court is obligated to insure that the proposed settlement is in the best interest of the Class Members by reference to the best possible outcome, it also recognizes that settlement typically represents a compromise and not hold counsel to an impossible standard."[10] And "even assuming for the sake of argument that the Class could recover a larger judgment at trial, the additional delay that would inevitably follow with post-trial motions and appeals could effectively deny the Class any recovery for several more years. Thus, a future recovery, even one in excess of the proposed settlement, which appears unlikely,

---

[9] *See Lachance v. Harrington*, 965 F. Supp. 630, 646 (E.D. Pa. 1997).

[10] *In re Aetna Sec. Litig.*, 2001 U.S. Dist. LEXIS 68, at *20-21 (E.D. Pa. Jan 4, 2001); *see also General Motors*, 55 F.3d at 806 (noting "after all, settlement is a compromise, a yielding of the highest hope in exchange for certainty and resolution").

may ultimately prove less valuable to the Class than receiving the benefits of the proposed settlement at this time."[11]

There can be little doubt these factors overwhelmingly weigh in favor of final approval. In fact, when combined with Factor 10, little more analysis should be required to conclude final approval is warranted. This settlement recovered more than half of all monies Defendants collected for PrivacyGuard and delivers a cash payment to each Class Members. This result is obtained in the face of the uncertainty of a jury trial as well as undoubtedly post-trial motions and appeal. The settlement guarantees each Class Member a recovery without further delay. As such, the settlement should be approved.

### B. The Proposed Settlement is Entitled to a Presumption of Fairness

Courts have consistently recognized a universal and long-standing public policy favoring settlement of civil actions.[12] Settlements are particularly favored in complex class actions such as this one.[13] Recognizing that settlements represent an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing settlements is neither to rewrite the settlement agreements reached by the parties nor to try the case by resolving the

---

[11] *In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 501 (W.D. Pa. 2003).

[12] *See, e.g., Carson v. Am. Brands., Inc.*, 450 U.S. 79, 88 n. 14 (1981); *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("[c]ompromise of disputed claims is favored by the courts").

[13] *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should be encouraged"); *General Motors*, 55 F.3d 768, 784 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) ("holding that [t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1455 (E.D.Pa. 1995) (explaining that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy encouraging settlements to 'an overriding public interest'").

issues left unresolved by the settlement itself.[14]  To this end, courts should "apply an initial presumption of fairness when reviewing a proposed settlement where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation, and (4) only a small fraction of the class objected.'"[15]

The settlement presently before the Court is entitled to this presumption of fairness. While the relief speaks for itself, it is plainly not the product of any collusion, but instead the result of well-informed, experienced counsel negotiating at arm's length.  The parties were fully prepared to proceed with trial within hours of reaching agreement on the settlement terms. The settlement represents an excellent result for the Class while avoiding the delay associated with trial, post-trial motions, and appeal.  Indeed, not a single Class Member objected to the settlement terms and only 9 elected to be excluded. The settlement is presumptively fair and warrants final approval.

### C.   The Proposed Distribution Plan Should Be Approved By the Court

Approval of a distribution plan of a settlement fund in a class is "governed by the same standards of review applicable to the approval of a settlement as a whole:  the distribution plan

---

[14] *See, e.g., Bryan v. Pittsburgh Plate Glass Co*., 494 F.2d 799, 804 (3d Cir. 1974), *cert. denied*, 491 U.S. 900 (1974).  Thus, "[t]he temptation to convert a settlement hearing into a full trial on the merits must be resisted." *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1315 (3d Cir. 1993).

[15] *Warfarin Sodium*, 391 F.3d at 535 (quoting *Cendant*, 264 F.3d at 232 n. 18); *see also In re Linerboard Antitrust Litig*., 292 F. Supp. 2d at 640 (holding that "[a] presumption of correctness is said to attach to a class action settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.").

12

must be fair, reasonable, and adequate."[16]  Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable."[17]

      The Settlement Amount will be distributed by the Claims Administrator in the form of pro rata checks based on the Class Members total payments for PrivacyGuard during the Class Period.  The check will be void after 180 days of issuance.  After distribution to the Class, any remainder under $50,000 of the Settlement Fund shall create a cy pres trust.  The remainder amounts shall include any distribution settlement checks that remain un-cashed 180 days after issuance.  If the remainder is over $50,000, a secondary pro rata distribution of the fund balance from uncashed checks shall be disbursed to the Class.  The distribution plan is fair and reasonable; as such, Plaintiff seeks an order approving the distribution plan set forth in the Settlement Agreement.

---

[16] *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 335 (E.D. Pa. 2007).

[17] *In re Corel Corp. Inc. Securities Litig.*, 293 F. Supp. 2d 484, 493 (E.D. Pa. Jan. 4, 2001).

## V. CONCLUSION

Based on the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the partial class settlement; confirm the Notice and notice program, as it satisfies due process as executed; and approve the proposed distribution plan.

Dated: June 10, 2019

Respectfully Submitted,

By: */s/ Patrick Howard*
Simon B. Paris
Patrick Howard (PA 88572)
Charles J. Kocher (PA 93141)
**SALTZ MONGELUZZI BARRETT & BENDESKY, P.C**.
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Tel.: (215) 575-3986
Fax: (215) 575-3894
Email: sparis@smbb.com
Email: phoward@smbb.com
Email: ckocher@smbb.com

Lee S. Shalov
**McLAUGHLIN & STERN LLP**
260 Madison Ave.
New York, NY 10016
Tel: (646) 278-4298
Cell: (516) 359-1825
Fax: (212) 448-0066

*Counsel to Plaintiff and the Class*